THE CHICAGO UNION TRACTION COMPANY *et al.*

*v.*

MINNIE MAY.

*Opinion filed April 17, 1906—Rehearing denied June 7, 1906.*

1. TRIAL—*when evidence as to subsequent physical conditions should go to jury.* Where the evidence shows that the plaintiff was a strong, healthy woman before the injury to her spine; that immediately thereafter she suffered serious pains; that her genital organs became diseased and within a few weeks she became unable to walk or take any exercise without great pain, and that she underwent two operations for ovarian cyst, the question whether such conditions were the result of the injury is properly left to the jury under proper instructions, even though the physicians who testified could not state with certainty whether the diseased conditions requiring the operations were or were not caused by the injury.

2. SAME—*when motion to strike out testimony is properly denied.* A motion to strike out testimony relative to the physical condition of the plaintiff in a personal injury case is properly denied, where the testimony was admitted without objection or any promise on the part of plaintiff's counsel to show that such conditions were the result of the injury.

3. EVIDENCE—*when proof as to what plaintiff earned prior to injury is admissible.* Under an allegation that the plaintiff "was and is hindered and prevented from transacting and attending to her business and affairs, and lost and was deprived of divers great gains and profits which she might and otherwise would have acquired," proof that the plaintiff, prior to her injury, earned on an average of $300 a year making dresses, is proper.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. E. E. NEWLIN, Judge, presiding. -

JOHN A. ROSE, and ALBERT M. CROSS, (W. W. GURLEY, of counsel,) for appellants.

HARRY W. McEWEN, and LLOYD CHARLES WHITMAN, for appellee.

Mr. JUSTICE HAND delivered the opinion of the court:

This is an appeal from a judgment of the Appellate Court for the First District affirming a judgment of the circuit court of Cook county in favor of appellee for the sum of $15,000, for a personal injury alleged to have been sustained by the appellee in consequence of a street car upon which she was about to take passage being suddenly started, whereby she was thrown backward against the side of the car, and her spine and certain organs of her body were severely and permanently injured.

The declaration upon which the case was tried consisted of three counts. The first count averred, in substance, that the West Chicago Street Railroad Company on May 5, 1901, was the owner of a street railway in Robey street, in the city of Chicago, and allowed the Chicago Union Traction Company to operate its passenger cars thereon, and the plaintiff, on the day and year aforesaid, became a passenger on a car operated by the Chicago Union Traction Company, whose duty it was to so operate its cars on said street railway as to keep plaintiff safe from injury, but said defendant so carelessly and negligently operated its car on which plaintiff was a passenger, that while plaintiff was exercising due care for her own safety she was thrown with great force and violence upon and against the side of said car and was injured, and the spine and nervous system of plaintiff was bruised, wounded, etc., and certain of her pelvic and abdominal

viscera were deranged and injured, etc., and she was obliged
to and did expend divers sums of money, to-wit, $2000, in
endeavoring to be cured, and suffered great pain and agony
thence hitherto. The second count, after averring the rela-
tion between the appellant companies as in the first count,
avers, in substance, that the plaintiff attempted to board and
become a passenger on one of the Chicago Union Traction
Company's cars at the intersection of Potomac avenue and
Robey street, which car was stationary for the purpose of
receiving passengers, and that the said defendant, not re-
garding its duty in that behalf, and while plaintiff was exer-
cising due care, caused said car to be suddenly and violently
started and moved, thereby causing plaintiff to be thrown
with great force and violence against the side of said car and
injured, etc. The third count avers, in substance, that plain-
tiff became a passenger on the car when it was stationary, at
the intersection of Potomac avenue and Robey street, for the
purpose of receiving passengers, and that it was the duty of
defendant to afford plaintiff a reasonable opportunity to
board said car in safety, but the defendant the Chicago Union
Traction Company did not regard its said duty, and caused
said car to be suddenly and violently started and moved
while she was in the act of boarding the same and exercising
due care, so that she was thrown with great force and vio-
lence against the side of the car and injured, etc. Each of
the appellants filed the general issue.

It is first contended that the court erred in refusing to
instruct the jury, at the close of all the evidence, to return a
verdict in favor of the defendants. The evidence of plaintiff
fairly tended to show that the appellee, on the afternoon of
the 5th of May, 1901, sought to board a street car operated
by the Chicago Union Traction Company upon Robey street,
at Potomac avenue, in the city of Chicago; that the car stop-
ped at the usual place at the intersection of said street and
avenue to discharge and receive passengers; that the appellee
took hold of the hand-iron upon the car with her left hand

and placed her left foot upon the running-board upon the side of the car, for the purpose of getting onto the car, when the car suddenly started with a jerk, and appellee was thrown around backward and her body struck against the side of the car, and her back and the lower portion of her body were severely bruised, twisted and strained; that one Bixby, who occupied a seat upon the car near where appellee sought to enter the car, seeing her perilous situation, reached out and caught hold of her and assisted her to enter the car; that appellee, upon entering the car, became faint, and did not for a time have full possession of her mental faculties; that she remained upon the car until it reached VanBuren street, when, with assistance, she took a car upon that street and rode to Washtenaw avenue, and from there walked about one block to 1160 Jackson avenue, to the home of an acquaintance, Miss Hanna, where she remained until evening, when Miss Hanna assisted her upon a car and she returned to her home at 164 Potomac avenue; that she has been confined to her house and bed and under the care of a physician from the day succeeding that night until the present time; that prior to her injury the appellee was in good health and strong and vigorous; that she has since been in a hospital twice, for several weeks each time,—once in April, 1903, and again in December, 1903,—and that at the time of the trial she was in a weak and feeble condition, and from the testimony of the physicians who testified on her behalf it appears she has sustained a severe injury to the lower part of the spine, and that the probabilities are she is a confirmed invalid. We think the court did not err in declining to take the case from the jury.

It is also insisted that the court erred in declining to instruct the jury that there could be no recovery under the second and third counts of the declaration, on the ground that there was a variance between the proofs and the allegations of those counts in this: that each of said counts averred the car upon which the appellee sought to take passage was

standing still, and that as appellee sought to board the same
it was suddenly and violently started, thereby causing appel-
lee to be thrown with great violence against the side of said
car, while the proof showed the appellee sought to board a
moving car at the time she was injured.   The witness Bixby,
who assisted the appellee to enter the car, testified the car
was standing still at the time the appellee took hold of the
hand-iron and stepped upon the running-board, and the con-
ductor who was in charge of the car, and who was called by
the appellants, testified that the car came to a stop at Poto-
mac avenue, and that he held it until appellee got on and
then he started it.   The appellee's testimony was to the effect
that the car was standing still at the time she attempted to
board it.   There was no variance between the proofs and the
second and third counts of the declaration, and the court did
not err in overruling said motion.

It appears that the appellee, at each time she was in the
hospital in April and December, 1903, underwent a surgical
operation; that at the first operation there was removed a
cyst as large as an orange from appellee's left ovary, and the
left ovary, three-fourths of the right ovary and part of the
left Fallopian tube were found to be diseased, and those dis-
eased parts and also a small fibroid tumor attached to the
fundus outside the uterus were removed;  and at the second
operation a cyst about the size of the former one and the re-
mainders of the right ovary and the Fallopian tubes were re-
moved.   No objections were made by the appellants to the
introduction of proof of the conditions found in the lower
internal organs of appellee, or the parts removed at the time
said operations were performed, at the time the testimony
was submitted to the jury.   At the close of the testimony on
behalf of appellee, and again at the close of all the testimony,
the appellants moved the court to strike out said testimony,
on the ground that the evidence failed to show the diseased
conditions found in the lower internal organs of appellee
which were revealed at the time said surgical operations were

performed, were caused by the injury received by her on the fifth day of May, 1901. This motion the court overruled, and properly so, as the evidence was admitted without objection or without a promise on the part of counsel for the appellee to show that the conditions discovered at the time of the surgical operations in the internal organs of appellee were the result of the accident relied upon as a ground of recovery. (1 Thompson on Trials, sec. 716; *Hanford* v. *Obrecht,* 49 Ill. 146.) The question was, however, preserved for review, we think, by an exception to a refused instruction offered by the appellants, to the effect that the jury, in deciding the case, should wholly disregard all evidence as to the condition of appellee's lower internal organs as disclosed by said surgical operations, also as to any nervous condition or other disability which resulted from such conditions or said surgical operations, as appellee had failed to establish by the evidence that the cysts and ovary and womb troubles of appellee were caused by the accident claimed to have been sustained by appellee through the negligence of appellants.

The physicians who testified for appellee stated that the cause of ovarian cysts was unknown, and they were unable to state that the conditions found in appellee's ovaries, Fallopian tubes and womb were the result of an external injury. Dr. Henrotin said: "I cannot take it for granted that trauma forms any portion or element in the origin or development of cysts,—of ovarian cysts." And Dr. Kolischer said: "If it be true [which was the case with the cyst removed at the first operation] that the condition of the cyst which was operated upon was dark-colored, then I can imagine that an injury led to a hemorrhage into the contents of the cyst." And Dr. Moore, who was Mrs. May's regular physician, and who was called the second day after the accident, said: "I do not know whether she had any condition of cystic tumor prior to May 7, 1901. This condition may have been born with her. It is very frequently true that there are congenital conditions of that kind, and that they come into girlhood and

from girlhood into womanhood, and that they may progress many years, in fact, before the condition becomes such as to require the attention of the expert and surgeon. They may go through life and never require it."

The evidence showed beyond all question that prior to her injury Mrs. May was a strong, healthy woman; that she frequently walked from the business district of the city to her home,—a distance of from four to five miles; that she did the household work for a family of three,—her husband, her father and herself,—including the washing and ironing, and earned on an average $300 a year at her trade as dress and waistmaker; that immediately after the injury she had serious pains in her head, back, left leg and in the region of the abdomen; that her genital organs soon became diseased, and within a few weeks she became, and has continued to be, unable to take any physical exercise, or to walk, without great pain in her head, back, left leg and lower part of the abdomen. The physicians who treated and operated upon her did not say that the conditions they found when they operated were not the result of an external injury, but, at most, said they could not say they were the result of such injury. One said he could imagine they were. We think it was a correct practice for the court to permit appellee to prove the condition of her health at and prior to the time she was injured, and then to follow up that proof by showing her physical condition from the time of her injury down to the time of the trial, and to submit the question of the cause of her then physical condition, as a question of fact, to the jury under proper instructions, which was the course of procedure followed in this case. The court gave to the jury, on behalf of the appellants, the following instruction :

"The jurors are instructed that with respect to the ailments and disabilities claimed for the plaintiff in this case, the burden of proof is upon the plaintiff in that respect, as it is with respect to the question of liability, to show, by a preponderance of the evidence, not only that such ailments really

exist or have existed, but also that such ailments and disa-
bilities are the result of the accident in question. The jury
are further instructed that they have no right to guess or
conjecture that any ailment complained of by the plaintiff is
the result of this accident."

Under this instruction, unless the jury found that the
conditions disclosed in the appellee's genital organs at the
time of said surgical operations were such as were reasonably
certain to follow as a result of the injury complained of, they
would be bound to disregard them in making up their ver-
dict, otherwise not. (*Lake Shore and Michigan Southern
Railway Co.* v. *Conway,* 169 Ill. 505.) The law requires a
case should be submitted to the jury if the evidence on be-
half of the plaintiff, together with the legitimate inferences
which may be drawn therefrom, fairly tends to support the
cause of action stated in the declaration, and in determining
whether the court erred in declining to eliminate from the
consideration of the jury the evidence sought to be elimi-
nated from their consideration in this case by the instruction
refused by the court, the rule is the same. If, therefore, the
testimony of the plaintiff be taken as true, together with all
legitimate inferences that may be drawn therefrom,—*i. e.,*
that the appellee was in good health prior to the injury; that
she thereafter was in poor health; that she suffered pain in
her head, back and left leg and lower part of the abdomen,
and her genital organs became diseased, and an examination
disclosed a severe injury to the lower part of the spine; that
she may have had ovarian cysts from girlhood and suffered
no inconvenience therefrom; that within a short time after
the injury it was found that she did have ovarian cysts and
fibroid tumors, from which she suffered greatly, necessita-
ting two surgical operations to remove them,—might not the
jury, from the admitted facts, have legitimately drawn the
conclusion that a pre-disposition to those conditions existed
in appellee prior to the injury but from which she suffered
no inconvenience, and that such pre-existing condition, as a

result of such injury, was so aggravated as to make what was a harmless condition prior to the injury a distressingly painful one after the injury? We think they might. If we are correct in so holding, then under the authority of *Chicago City Railway Co.* v. *Saxby*, 213 Ill. 274, the appellee was entitled to recover for such aggravated condition.

We are of the opinion the court did not err in refusing to instruct the jury to disregard the evidence of the diseased conditions found in the appellee's ovaries, Fallopian tubes and womb at the time the surgical operations were performed upon her in April and December, 1903, but think the court properly left the question whether those conditions were the result of the injury which she sustained when she attempted to board said street car, to the jury as a question of fact. *City of Mt. Carmel* v. *Howell*, 137 Ill. 91; *Illinois Central Railroad Co.* v. *Smith*, 208 id. 608.

It is next contended that the court erred in permitting the appellee to testify that she earned on an average $300 per year making waists, dresses, etc., prior to the time she was injured. The declaration averred the plaintiff "was and is hindered and prevented from transacting and attending to her business and affairs, and lost and was deprived of divers great gains and profits which she might and otherwise would have acquired." Under this averment of the declaration we think the evidence was properly admitted. *City of Bloomington* v. *Chamberlain*, 104 Ill. 268; *Chicago and Erie Railroad Co.* v. *Meech*, 163 id. 305; *North Chicago Street Railroad Co.* v. *Brown*, 178 id. 187; *Illinois Steel Co.* v. *Ryska*, 200 id. 280.

Finding no reversible error in this record the judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*