## Mary A. Shaw, Appellee, v. The Chicago, Rock Island and Pacific Railway Company, Appellant.

### Gen. No. 17,035.

1. CARRIERS—*res ipsa loquitur.* Where the truck of the tender to an engine leaves the rails and the wheels run on the cross ties causing a passenger coach to tilt over and a passenger is injured, the rule of *res ipsa loquitur* applies.

2. CARRIERS—*that cause of accident is unknown will not rebut presumption of negligence.* Where the truck of the tender to an engine leaves its rails and the wheels run on the cross ties causing a passenger coach to tilt over, and a passenger is injured, that the cause of the derailment of the tender wheels is unknown will not rebut the presumption of negligence arising from the application of the rule *res ipsa loquitur.*

3. CARRIERS—*when employes are negligent in operating train after a derailment.* The wheels of a tender to an engine going thirty miles an hour left the rails and the engineer ran the train for one thousand feet before lessening the speed, the derailed wheels cut through rotten ties for a distance of ten or twelve feet and the jar on striking the sound ties caused a passenger coach to tilt over. There was evidence that the train crew were negligent in not noticing the derailment and in not taking steps to stop the train. *Held,* it was for the jury to determine whether the conduct of the engineer and train crew after the wheels were derailed was negligence which contributed to the accident.

4. DAMAGES—*when $15,000 not excessive.* Certain wheels of a train became derailed and a passenger was thrown alternately forward and back in her seat, her breast striking the edge of a chair in front of her. At the time of the accident she had black hair, weighed two hundred and twelve pounds and was of great physical ability. At the trial, three years later, her hair was gray, she weighed one hundred and two pounds and was unable to do any housework. She suffered an injury to her spine, had a cancerous lump on her breast, and had had constant medical attention. *Held,* a verdict for $15,000 would be sustained.

5. DAMAGES—*when proof is sufficient that injury was caused by accident.* Certain wheels of a train became derailed, and a passenger was thrown alternately forward, and back in her chair, her breast striking the edge of the chair in front of her. Since the accident her hair turned gray, she lost one hundred and ten pounds in weight, lost the unusual physical strength she possessed, and has suffered with a cancerous lump on a breast, and with pains

in her spine. Expert and non-expert witnesses testified on both sides. *Held*, a finding of the jury that the injuries were caused by the accident would be sustained.

Appeal from the Circuit Court of Cook county; the Hon. H. STERLING POMEROY, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1910. Affirmed. Opinion filed October 3, 1912. Certiorari denied by Supreme Court (making opinion final).

M. L. BELL and A. B. ENOCH, for appellant.

CHARLES H. MITCHELL, for appellee.

MR. JUSTICE MCSURELY delivered the opinion of the court.

This is an appeal from a judgment for $15,000 obtained by Mary A. Shaw, hereinafter called plaintiff, against the Chicago, Rock Island & Pacific Railway Company, hereinafter called the defendant, in an action on the case for damages on account of personal injuries claimed to have been received by her while a passenger on an eastbound train belonging to the defendant, which was derailed near a station named Watkins, Colorado.

The declaration charges: (1) that defendant negligently permitted its track to become unsafe for the passage of trains over the same, and negligently suffered certain cross ties to become and remain decayed, whereby the train was derailed, etc.; (2) that the car in which plaintiff was riding was, through the negligence of defendant's servants in the management of the train, derailed and precipitated upon the ground with great violence; (3) general negligence in the operation of the locomotive and train of cars; by reason whereof the train became derailed, "and then and there before and after said derailment the defendant so carelessly managed said car that for want of due care said car partially overturned and was thrown from the rails with great force and violence;" (4) general averments of careless management and

operation of train, with particular averments of injuries sustained by plaintiff.

Defendant's first point in urging a reversal is that the evidence does not show a liability.

The train in question was approaching from the west toward Watkins, about 10 o'clock in the morning, at a speed of 28 or 30 miles an hour. At a point about 1,000 feet west of the westerly end of the switch track at Watkins, the forward truck of the tender left the rails and the wheels ran on the cross ties. This was not discovered by the engineer until the engine was about at the switch track. He then first began to diminish speed. The engine was going at the rate of about 25 miles an hour when it struck the switch track. The derailed truck struck the switch rails and tore them up. Continuing onward, the wheels of the derailed truck struck a bit of track where, as described by one witness, there were seven or eight rotten ties extending for a space of ten to twelve feet along the track. The derailed wheels cut through these rotten ties and sank into the ground, and ran through these ties and the ground until the sound ties were reached. The truck wheels then struck the sound ties with great force, and the coupling between the tender and engine was broken apart and the engine, weighing ninety tons, was thrown into the air, while the tender and cars ran off the rails and into a ditch on the side. When stopped, the tender was lying nearly on its side, and the car next it was partially overturned, and the other cars were more or less tilted over.

The happening of the accident having been proven, the rule of *res ipsa loquitur* applies and the burden of rebutting the presumption of negligence rests on the defendant. Defendant seeks to rebut this presumption by showing that the cause of the first derailment is unknown; but this is not sufficient for this purpose. The cases cited, in which the defendant carrier is held to have successfully rebutted the presumption of negligence, are cases where the immediate cause of the acci·

dent was known; that is, the accident was caused by the breaking of a car wheel or a rail or some other portion of the equipment, although what caused the breaking of the particular piece of equipment was unknown. It has been held that where the defendant has shown that it used the highest degree of care in the purchase and inspection of the particular article of equipment which subsequently broke, thus causing the accident, the presumption of negligence was rebutted; but we are referred to no case which holds that the inability or failure of a carrier to account for an accident in a *res ipsa loquitur* case is a sufficient defense. It will not avail to reply that the cause of the accident is a mystery. There is some evidence tending to show that the swaying of the water in the tank would cause the tender to roll, with a tendency to raise the wheels from the rails. There is also evidence from which it might be fairly inferred that the tender wheels were derailed by reason of an obstruction on the rail.

It is charged by the plaintiff that the train was negligently managed, both before and after the wheels of the tender left the rails. There is little, if any, denial of the fact that the engineer ran his engine and train with the front wheels of the tender running on the ties for nearly 1,000 feet before he made any effort to lessen the speed. There is also evidence from which the jury could reasonably infer that the conductor and other members of the train crew were negligent in not noticing the derailment and in taking no steps to stop the train. It appears clearly established that for a distance of ten or twelve feet the ties were rotten and that the wheels cut through these and into the ground, and that the greatest jar and the derailment of nearly the entire train and the tipping over of the cars was caused by the wheels of the tender sinking into the rotten ties to the ground, and then striking the sound ties with a shock. It was a proper question for the jury to determine whether or not the conduct of the engineer and other persons operating

the train, after the wheels of the tender were derailed, was negligence which contributed to the accident as charged in the declaration. We cannot say that the verdict of the jury finding the defendant guilty is against the weight of the evidence.

It is contended that the plaintiff's injuries were not caused by the accident, and that the verdict is excessive.

The plaintiff at the time of the accident was sitting in a chair car, the fourth from the engine. When the truck wheels struck the sound ties, after running through the rotten ones, the forward pulling of the engine and the momentum of the cars to the rear, produced a succession of backward and forward jerks, throwing plaintiff alternately forward, with her breast against the upward and back edge of the reclining chair in front of her, then back again and against the back of her own seat; and as each truck of the train came up to this point the operation would be repeated. She became partly unconscious. The plaintiff is a married woman, and at the time of the accident was 43 years of age. She weighed 212 pounds, and the evidence tends to show that she was a woman of unusual physical strength and endurance. She did her own housework in a nine-room house, washing, ironing and baking, and in addition, did many other things, indicating that she was a person of great physical ability. After the accident and her return home she remained in bed for two weeks, receiving medical attention; suffered pain in the spinal region, and her weight had diminished greatly. At the time of the trial, which was three years after the accident, she weighed 102 pounds, a loss in weight of 110 pounds. She has suffered with what was called a cancerous lump in the left breast, and has had constant medical attention since the accident. Her hair, which before the accident was entirely black, has become gray. To relieve the pain in her spine she rests her weight upon an air cushion, and has not been able to do any work since receiving these injuries.

Physicians were called to testify on behalf of the plaintiff and of the defendant. The jury and the court below heard the many witnesses who testified concerning the physical condition of the plaintiff. They also had the opportunity to observe the plaintiff herself. It has been said many times that this court should not interfere with the verdict of a jury on a question of this kind, unless such verdict is manifestly and palpably against the weight of the evidence. Donelson v. East St. Louis Ry. Co., 235 Ill. 625. In the case at bar we are not able to say that the finding of the jury that the injuries to plaintiff were caused by the accident in question, and the amount awarded her, are manifestly against the weight of the evidence.

Complaint is made of an instruction given to the jury at the request of plaintiff, touching the preponderance of evidence. While the instruction in the form given is subject to criticism and might under other circumstances become ground for reversal yet, following Deering v. Barzak, 227 Ill. 71, we do not think it warrants a reversal in this particular case.

It is urged that the trial court committed error in not admitting in evidence an article published in a certain magazine entitled "Annals of Surgery." The ruling of the trial court in this regard was correct. City of Bloomington v. Shrock, 110 Ill. 219.

It is suggested that other errors were committed by the court in ruling upon the admissibility of evidence, but after consideration of these we hold that there was no reversible error in such rulings.

In conclusion, this court feels compelled to say that the violent and heated mutual criticism of counsel exhibited in the briefs and arguments filed in this case have given no aid whatever to the court in attempting to arrive at a decision.

Finding no reversible error in the record, the judgment will be affirmed.

*Affirmed.*