## Lillian W. Rehthaler, Appellee, v. Crane Company, Appellant.

### Gen. No. 24,804.

1. Negligence, § 196*—*when cause of injury is question of fact.* As a general rule the question whether an injury is the result of plaintiff's negligence or defendant's negligence or of their combined negligence is one of fact for the jury, and only becomes a question of law when the evidence clearly shows that the accident resulted, in part at least, from the injured person's negligence.

2. Negligence, § 196*—*what is effect of difference of opinion as to cause of injury.* If there be any difference of opinion as to whether an injury resulted from the negligence of plaintiff or the negligence of defendant, so that reasonable minds may arrive at different conclusions, the question is one of fact for the jury.

3. Appeal and error, § 1408*—*what evidence will sustain verdict.* In determining whether the verdict should be set aside on the ground that defendant was not guilty of the negligence charged, the rule is that if there is in the record any evidence from which, if it stood alone, the jury might, without acting unreasonably in the eye of the law, find that the material averments of the declaration have been proved, the case should go to the jury.

4. Roads and bridges, § 240*—*when question as to cause of injury is for jury.* In an action to recover for personal injuries re-

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

ceived through plaintiff being struck by iron pipes protruding from a wagon driven through the street by defendant's employee, where the evidence shows that the pipes protruded 8 or 10 feet beyond the rear of the wagon, that the plaintiff was unable to see the nature of the load, as the wagon was driven directly towards her until it made the turn at the cross street at which the accident occurred, that in making such turn the pipes were caused to swing and that plaintiff was a sufficient distance from the wagon not to have been struck except for the character of the load, it was *held* that the question as to whether plaintiff's or defendant's negligence or the negligence of both caused the injury was for the jury.

5. DAMAGES, § 188*—*when evidence is sufficient to sustain finding as to cause of injury.* In an action to recover for personal injuries received through being struck by iron pipes, which were being hauled in a wagon driven by defendant's employee, it appearing that subsequently cancer developed at the place of the injury, evidence examined and *held* sufficient to warrant a finding that there was a causal connection between the blow and the cancer.

THOMSON, P. J., dissenting.

6. DAMAGES, § 200*—*what instructions are properly refused.* In an action to recover for personal injuries received through being struck by iron pipes being hauled in a wagon driven by defendant's employee, where it appeared that cancer subsequently developed at the place where plaintiff received the blow, it is not error to refuse an instruction requested by defendant to the effect that before plaintiff could recover on the ground that she was suffering from cancer as a result of the injury, the driver must have foreseen that if she was so struck by the pipes, cancer might reasonably be expected to develop.

7. INSTRUCTIONS, § 126*—*what instructions are erroneous.* It is not error to refuse instructions which are abstract in form.

8. ROADS AND BRIDGES, § 241*—*when instruction as to duty of driver is erroneous.* In an action to recover for personal injuries received through being struck by iron pipes protruding beyond the rear of the wagon in which they were being hauled, it is not error to refuse defendant's requested instruction that it was the driver's duty to keep a lookout in front of him, since, in view of the unusual character of the load, this might not be his sole duty.

9. EVIDENCE, § 446*—*what is proper question on examination of expert.* Where, in an action to recover for personal injuries, in cross-examination of a medical expert called by plaintiff, defendant's counsel asks him whether he took the family history into consideration, it is not error to permit plaintiff to bring out, on redirect, what the family history was.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

10. WITNESSES, § 209*—*what is extent of cross-examination.* It is not error to sustain an objection, on the cross-examination of a witness, to a question relating to which he was not permitted, on objection of the same party, to testify as to on direct.

Appeal from the Superior Court of Cook county; the Hon. MARCUS KAVANAGH, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1918. Affirmed. Opinion filed May 5, 1920. Rehearing denied May 17, 1920. *Certiorari* denied by Supreme Court (making opinion final).

ALDEN, LATHAM & YOUNG, for appellant.

GEORGE PFIRSHING, for appellee.

MR. JUSTICE O'CONNOR delivered the opinion of the court.

Plaintiff brought suit against defendant to recover damages for personal injuries. There was a verdict and judgment in her favor for $4,000, to reverse which defendant prosecutes this appeal.

The record discloses that plaintiff, a married woman about 35 years old, was struck on the breast by some iron pipes, which were being hauled in one of appellant's wagons, and which extended 8 or 10 feet beyond the rear end of the wagon. Later cancer developed at the place of the injury which necessitated an amputation of the left breast, and at the time of the trial it was certain that plaintiff would die from the cancer.

Defendant's theory of the case is that it was not guilty of any negligence, and that there was no connection between the slight injury received by plaintiff by being struck by the iron pipes and the cancer which later developed.

Prior to the injury plaintiff was in good health, the mother of three children, and devoted a part of her time to assisting her husband in the conduct of his business. He was a dealer in orthopedic supplies, and had his

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

office in the Kesner Building at Madison street and Wabash avenue in Chicago. About 11:30 o'clock on the morning of the accident, February 13, 1914, she left her husband's office to go to lunch, and returning she walked south on the east sidewalk of Wabash avenue. Just as she was crossing Washington street on the east crosswalk, a one-horse wagon belonging to defendant was being driven north in the east street car track of Wabash avenue. This wagon was loaded with iron pipes, about 2 inches in diameter, which extended 8 or 10 feet beyond the rear end of the wagon. There are two street car tracks on Wabash avenue south of Washington street. The east or northbound track turns east into Washington street. The horse and wagon turned east into Washington street. Plaintiff at that time was in the roadway on the east crosswalk of Washington street and stopped to permit the horse and wagon to pass in front of her. The horse was being driven at a walk. As the wagon turned east, the driver swung his horse to the south to get out of the street car track. As he did so, the pipes extending from the rear end of the wagon swung to the north and struck plaintiff in the left breast knocking her down. She did not see the pipes in the wagon until it was too late to avoid being struck although she testified she was 8 or 10 feet north of the wagon when it turned east. She was assisted to her feet by Dr. Steele and the crossing policeman. She told them that she was not much hurt. Her waist was torn where she was struck and was somewhat soiled. Dr. Steele gave her his card and stated that if she later found that she was injured more than she then thought she might notify him. She proceeded south to the next corner to the building where her husband kept his office. There she met a Mr. Bleadon who brought her a chair that she might sit down as she seemed to be somewhat stunned. Shortly after he went with her to Dr. Steele's office, which was in the Columbus Memorial Building, a distance of about two blocks. Dr. Steele examined her

Rehthaler v. Crane Co., 218 Ill. App. 267.

and found a red mark on her left breast where she had been struck. The skin was not torn and there was no bleeding. About 5 days later she again visited Dr. Steele at which time the redness on her breast had disappeared, and at that time the spot was black and blue and was about 3 inches in diameter. Plaintiff testified that from the time of the injury until she visited Dr. Steele the second time she had a dull pain where she was struck, sometimes a burning sensation, and other times a sharp pain. Later on the bruise disappeared. In May following she and her family moved to Battle Creek, Michigan, and some time in June she discovered a lump about the size of a hazelnut on her left breast, about where the bruise had been. July following she consulted Dr. Harris at the Battle Creek Sanitarium who advised an immediate operation. Shortly after Dr. Harris went to Europe and after his return, January 8, 1915, she again called on him. He again advised an operation and on the 20th of the same month the entire left breast was removed. The lump in her breast was a cancer. For a time afterwards she seemed to be improved in health. Later on another lump developed. She was again examined by Dr. Harris and several X-ray pictures taken. There is now another cancer which all the doctors testified would steadily grow worse and ultimately cause her death. Plaintiff, Dr. Steele and the crossing policeman testified, on behalf of plaintiff, as to how the accident occurred. The driver of the wagon did not testify. In fact the testimony shows that the driver did not know that any one had been injured and the defendant company was never able to ascertain which one of their drivers was in charge of the wagon.

Defendant contends that plaintiff was guilty of the negligence which caused the injury and that defendant was not guilty of any negligence and, therefore, the judgment is wrong and should be reversed.

As a general proposition the question as to whether

an injury is the result of the negligence of plaintiff or defendant, or of the combined negligence of both, is one of fact for the jury, and only becomes one of law when the evidence clearly shows that the accident resulted, in part at least, from the negligence of the injured party. If there be any difference of opinion so that reasonable minds may not arrive at the same conclusion, then it is a question of fact for the jury. *Bale v. Chicago Junction Ry. Co.*, 259 Ill. 476; *Louthan v. Chicago City Ry. Co.*, 198 Ill. App. 329. In determining whether the verdict should be set aside on the ground that defendant was not guilty of the negligence charged, the rule is that if there is in the record any evidence from which, if it stood alone, the jury might, without acting unreasonably in the eye of the law, find that the material averments of the declaration have been proved, the case should go to the jury. *Libby, McNeill & Libby v. Cook*, 222 Ill. 206. Under the evidence here we think the case was a proper one for the jury to consider. Here the undisputed evidence is that defendant was driving a horse and wagon with an unusual load of iron pipes which protruded 8 or 10 feet beyond the rear end of the wagon. It was being driven almost directly towards plaintiff until it turned east into Washington street. As plaintiff was walking south just prior to the accident, the wagon was coming north in Wabash avenue, and it would be difficult for her to see the nature of the load on the wagon. Of course, the driver of the wagon knew that the load was an unusual one, and that the pipes extending beyond the end of the wagon were dangerous to persons on the street. The evidence tends to show that plaintiff stopped a sufficient distance from the wagon to permit it to pass and would have received no injury except for the unusual load which she did not see until it was too late to get out of the way of the swinging pipes. The evidence also tends to show that turning the horse out of the street car tracks in Washington street caused

the pipes to swing to the north.   In these circumstances we think the case was a proper one for the consideration of the jury.   A case somewhat analogous and which is cited by both sides is *Gielens v. Fidelity Transfer & Storage Co.,* 63 Wash. 383, 2 N. C. C. A. 544.

It is next insisted that the verdict and judgment are wrong in that the evidence shows that there is no causal connection between the blow which plaintiff received on the breast and the cancer from which she later suffered; that a blow cannot cause cancer.   There is no dispute in the evidence but that plaintiff, prior to the accident, was a strong, healthy woman, and that she was struck on the breast by the iron pipes February 13, 1914, and knocked to the ground; that she was assisted to the sidewalk and appeared not to be greatly injured; that she went alone to her husband's place of business about a block away; that about an hour afterwards she went with the witness Bleadon to Dr. Steele's office which was a distance of two blocks; that she was then examined by Dr. Steele who found a red spot on her breast; that he gave her some treatment and that she went away, and about 5 days later again called on Dr. Steele; that he again examined her breast and found that the red spot had disappeared but that her breast was then black and blue, the spot being about 3 inches in diameter; that afterwards the mark of the injury seemed to disappear from her breast; that in June following she discovered a small lump about the size of a hazelnut in her left breast; that shortly afterwards she consulted Dr. Harris at Battle Creek and he advised an immediate operation and diagnosed her ailment as cancer; that the following January the entire left breast was removed; that subsequently another lump developed and at the time of the trial she was suffering from cancer which would ultimately result in her death.   Plaintiff testified that from the time she received the blow she suffered pain, sometimes a dull pain and other times a sharp pain and a burning sen-

sation in her breast up until the time of the trial. Dr.
Harris, for the plaintiff, testified that he was a grad-
uate of the American Medical Missionary College,
which was later merged with the University of Illinois,
also a graduate of the Royal College of Edinburgh,
Scotland; that he was a Fellow of the Royal College of
Surgeons of Edinburgh, and later a Fellow of the
American College of Surgeons; that since 1910 he was
second in rank in the surgical department at the Battle
Creek Sanitarium; that he examined plaintiff in July
1914, and diagnosed the lump in her breast as the be-
ginning of cancer and advised an immediate operation;
that shortly afterwards he went to Europe and re-
turned the following January, and that Dr. Kellogg,
the chief surgeon at Battle Creek Sanitarium, operated
on plaintiff; that afterwards he treated plaintiff, and
saw her December 27, 1917; that he again examined
her and found that the bulge in her chest had greatly
increased since his previous examination.   He gave
other testimony detailing plaintiff's condition which
shows that her case is hopeless.   He further testified
that it was impossible to definitely prove the cause of
cancer; that nobody knows; that there is a vast amount
of money spent all over the world to ascertain the cause
but that every one is still in the dark; that from his
own experience he knows that injuries had favored the
growth of cancer; that 10 per cent of cancers are caused
by traumatism or injury; that some surgeons, whom
he considers good authority, estimate that as high as
14 per cent of cancers are so caused; that at first cancer
is a local disease and later constitutional.   On cross-
examination he testified that when he first examined
plaintiff she had no pain but there was a burning sensa-
tion in her breast; that her family history was given
him before the operation; that there is a great differ-
ence of opinion among doctors concerning the relation
of trauma to cancer, some suggesting that there is a
relation between them only if there is long-continued

irritations; that others are of the opinion that trauma alone may cause cancer, especially in the breasts of women; that a single blow can produce cancer cells, and that in addition to his own experience he relied, for authority, on Keene's Surgery; that from 86 to 90 per cent of cancers of the breast develop without any history of injury at all; that in a majority of the remaining 10 to 14 per cent there is a history of a single intensive injury; that there was no cancer, tumor or tuberculosis in the family history of plaintiff. Dr. Steele, who was an occurrence witness for plaintiff, was called by defendant and testified that in his opinion there was no marked relation between the lump found by Dr. Harris on plaintiff's breast and the blow she received from the pipes, but that he would not say it was impossible that there was some causal connection between the blow and the lump; that he would not say positively whether the blow caused the cancer. In answer to a question by the court, he said that if a person received a blow which caused a long-continued irritation it might produce a cancer. Dr. Bevan, an eminent surgeon of Chicago, was called by defendant and testified that he was chief surgeon at the Presbyterian Hospital, professor of surgery at Rush Medical College, and had been vice president of the American Society for the Control of Cancer; that cancer attacked persons indiscriminately, the healthy as well as the unhealthy; that it was his opinion, and the opinion of others who had specially studied the subject, that a single blow never causes cancer; that when a patient is suffering from cancer and attributes it to a blow, the blow is a mere coincidence; that a cancer the size of a hazelnut in a woman's breast might develop in 4 or 5 months, or it might take more than a year; that in his opinion there is no relation between a blow and cancer. Dr. Davis, for defendant, testified that he was professor of surgery in the College of Physicians and Surgeons, Chicago, and also had been connected as

surgeon with other institutions; that in his opinion a single blow cannot cause cancer. Dr. Wood of New York, a specialist in the study of cancer, for about 20 years, testified that he had examined all cases of cancer, about 200 or 300 per year, coming to St. Luke's Hospital, New York, with which he was connected; that the real cause of cancer is unknown; that medical men generally have been trying to discover what causes cancer and how to cure it; that there are many theories as to the cause; that cancer is a growth of cells on the body which cannot be stopped, and which continues growing until it kills the person; that in his opinion cancer could not be produced by a blow or a single trauma; that in many cases in which a blow was said to have produced a cancer investigation showed that the blow was received only a few weeks before the patient discovered the cancer which was of such size and extent that it must have been present long before the blow was received; that in such cases, it was his opinion that the blow merely calls the attention of the patient to the cancer and does not cause it. On cross-examination he testified that the medical profession was as much in the dark to-day concerning the cause of cancer as they were 100 years ago. He further testified that it was not impossible that a blow or injury received by a woman 5 or 6 months before a small cancer the size of a hazelnut was discovered had something to do with it especially if the act caused some irritation—he could not say positively that it did not. He further explained that when he said it is possible that this cancer came from trauma it was on the theory that as the cause of cancer is unknown, anything may possibly have some relation to it. Drs. Bevan, Davis and Wood, in response to a hypothetical question covering the facts in the instant case, all testified that, in their opinion, there was no causal connection between the blow and the cancer.

Rehthaler v. Crane Co., 218 Ill. App. 267.

In addition to the general verdict the jury answered three special interrogatories submitted at the request of defendant, and the third of which was as follows: ''Q. Was the cancer which developed in plaintiff's breast caused by the blow she received on February 13, 1914? A. Yes.'' Counsel for defendant argue that in the light of the evidence, the answer of the jury to the special interrogatory and the general verdict in favor of plaintiff is at most but a mere guess or conjecture; that verdicts cannot be predicated on either and, therefore, in this case the verdict is erroneous and should be set aside and the judgment reversed. In support of its contention that there is no causal relation between the blow and the cancer, defendant cites the case of *Bishop v. Chicago Telephone Co.*, 210 Ill. App. 347. In that case, the deceased, who was working for defendant upon a telephone pole, fell and was injured, and it was claimed, by reason of the spikes which were in the pole being insecure. The accident occurred June 11, 1911, and deceased died June 28, 1914. Plaintiff's claim was that deceased died of cancer traceable to the injury received when deceased fell. There a doctor testified for plaintiff that the medical profession did not know the cause of cancer; that he had treated deceased for syphilis, which was discovered by the Wassermann test. Another of plaintiff's witnesses testified that ''he made an autopsy on deceased body; that he found a surgeon's incision on the left breast, which had healed, also an enlargement of the left testicle and of the heart, also chronic inflammation of the inner lining of the arteries of long standing; both lungs had little hard masses, from the size of a pea to the size of a walnut; that there were a dozen of them in the liver; the kidneys were enlarged and showed numerous scars on the outer surfaces; in his opinion death was caused by chronic myocarditis or changes in the arteries called endocarditis; that endocarditis is an inflammation of the lining of the arteries

and may be produced by alcoholism, syphilis or rheumatism; the heart muscle was degenerated, partly from age, partly from chronic diseases; there was no evidence of external violence except of a surgical character, nor of a fall or accident.'' Another doctor called by plaintiff testified that he had treated the deceased during his lifetime, for a venereal disease; that he removed the cancerous breast. Other medical witnesses testified that they did not know the cause of cancer. Dr. Holmes testified that he never heard of a cancer of the breast in a male caused by trauma. Dr. Small testified that he never knew of a case of cancer caused by trauma. The court continuing said: ''Aside from all this medical testimony there is much other testimony, including letters of deceased and his wife to some of the employees of defendant, which when considered with the medical testimony make it clear, we think, that no injury sustained by the deceased while working on defendant's telephone pole June 11, 1911, had anything whatever to do with the ailments which resulted in his death.'' The court further said: ''Moreover, the overpowering weight of the evidence demonstrates that the spike from which it is alleged deceased fell was not in a condition of disrepair.'' Furthermore, the court held it was significant that no claim was made for damages at any time by the deceased during his lifetime. The first notice of the claim defendant received was the summons in the suit. The court held that the verdict of the jury was wrong and reversed the judgment with a finding of fact. From what we have said about that case we think it clearly apparent that deceased died from causes other than cancer.

*Chicago Union Traction Co. v. May,* 221 Ill. 530, was an action for personal injuries claimed to have been suffered by reason of plaintiff being thrown with great force and violence against the side of a street car which she was in the act of boarding. It was contended that

many of plaintiff's ailments, and for which she claimed damages, were not the result of the accident. About 2 years after the accident plaintiff underwent a surgical operation in which an ovarian cyst was removed. Other pelvic organs of plaintiff were diseased. It was contended that these pelvic disorders were not the result of the accident. The court said (p. 535): "The physician who testified for appellee stated that the cause of ovarian cysts was unknown, and they were unable to state that the conditions found in appellee's ovaries, Fallopian tubes and womb were the result of an external injury. Dr. Henrotin said: 'I cannot take it for granted that trauma forms any portion or element in the original or development of cysts,—of ovarian cysts.' And Dr. Kolischer said: 'If it be true (which was the case with the cyst removed at the first operation) that the condition of the cyst which was operated upon was dark-colored, then I can imagine that an injury led to a hemorrhage into the contents of the cyst.' And Dr. Moore, who was Mrs. May's regular physician, and who was called the second day after the accident, said: 'I do not know whether she had any condition of cystic tumor prior to May 7, 1901. This condition may have been born with her. It is very frequently true that there are congenital conditions of that kind, and that they come into girlhood and from girlhood into womanhood, and that they may progress many years, in fact, before the condition becomes such as to require the attention of the expert and surgeon. They may go through life and never require it.' " The court continuing said that the evidence showed that prior to the accident Mrs. May was a strong and healthy woman; that immediately after the injury she had serious pains in her head, back, left leg, and in the region of the abdomen; that her genital organs soon became diseased. Continuing, the court said: "The physicians who treated and operated upon her did not say that the conditions they found when they operated

were not the result of an external injury, but, at most, said they could not say they were the result of such injury. One said he could imagine they were. We think it was a correct practice for the court to permit appellee to prove the condition of her health at and prior to the time she was injured, and then to follow up that proof by showing her physical condition from the time of her injury down to the time of the trial, and to submit the question of the cause of her then physical condition, as a question of fact, to the jury under proper instructions." There the jury were instructed that the burden was upon the plaintiff to prove that the disabilities from which she suffered were the result of the accident, and they were told that they had no right to guess or conjecture that any ailment complained of by plaintiff was the result of the accident. The court held this instruction proper and said: "If, therefore, the testimony of the plaintiff be taken as true, together with all legitimate inferences that may be drawn therefrom,—i. e., that the appellee was in good health prior to the injury; that she thereafter was in poor health; that she suffered pain in her head, back and left leg and lower part of the abdomen, and her genital organs became diseased, * * * that she may have had ovaries cysts from girlhood and suffered no inconvenience therefrom; that within a short time after the injury it was found that she did have ovarian cysts and fibroid tumors, * * * might not the jury, from the admitted facts, have legitimately drawn the conclusion that a pre-disposition to those conditions existed in appellee prior to the injury but from which she suffered no inconvenience, and that such pre-existing condition, as a result of such injury, was so aggravated as to make what was a harmless condition prior to the injury a distressingly painful one after the injury?" In that case it was held that although the cause of ovarian cysts was unknown and although the doctor testified that he could not take it for granted

Rehthaler v. Crane Co., 218 Ill. App. 267.

that trauma had anything to do with the formation of the cyst, and another doctor testified he could imagine some connection between the injury and the formation of the cyst, this evidence together with the fact that plaintiff was a strong, healthy woman prior to the injury, and was diseased shortly thereafter, was sufficient to warrant a submission of the case to the jury under proper instructions, for their determination as to whether they might legitimately find from the testimony that the cyst resulted from the accident. In the instant case we think the evidence on behalf of plaintiff is much stronger than the evidence in the *May* case. Here one of the doctors testified that about 10 per cent of cancers occurring in women's breasts were the result of trauma. They all testified that they did not know the cause of cancer. The other doctors testified that cancer might be caused by trauma. The evidence also shows that prior to the injury plaintiff was a strong, healthy woman; that she suffered a burning sensation and pain in her breast from the time she received the blow; that 2 or 3 months afterwards she was afflicted with cancer in the breast and her health was much impaired. The jury were also told that they had no right to guess or conjecture that the cancer was the result of the blow, but before plaintiff could recover the jury must believe from a preponderance of the evidence that the cancer did result from the blow received. Upon a consideration of all of the evidence in this case we think the jury might reasonably find as they did, viz., that the blow on the breast caused the cancer.

In *Shaw v. Chicago, R. I. & P. Ry. Co.,* 173 Ill. App. 107, which was an action to recover damages for personal injuries, it was contended that a cancerous lump in plaintiff's left breast did not result from the injuries received. In that case plaintiff was a passenger of defendant railroad company. The wheels of the tender left the track and plaintiff was thrown forward, her

breast striking against the seat in front of her.  Prior thereto she was a strong, healthy woman.  After the accident she returned to her home and remained in bed for about 2 weeks.  She suffered pain.  At the time of the trial, 3 years afterwards, she weighed more than 100 pounds less than she did at the time of the accident.  She suffered with what was called a cancerous lump in the left breast.  The court held that the question whether the injuries suffered were the result of the accident was a proper one for the jury.

Complaint is also made to the refusal of the court to give an instruction tendered by defendant.  By this instruction it was sought to tell the jury that defendant could not be held liable unless they found from the greater weight of the evidence that it was guilty of the negligence charged, and "if you should find for the plaintiff on the question of negligence, still the Crane Company is liable only for the natural and probable consequences of the negligence proved, and the consequences must be such, in the light of the attending circumstances, that an ordinarily prudent man ought reasonably to have foreseen might probably occur as the result of such negligence."  We do not know what the quoted part of the instruction means.  It was certainly confusing and probably would be misleading and was, therefore, refused.  Counsel has made no application of it to this case.  As we understand it, it is to the effect that before plaintiff could recover in this case on the ground that she was suffering from cancer as a result of the injury, the driver of the horse must have reasonably foreseen that if the pipes struck plaintiff in the breast, a cancer might reasonably be expected to develop.  Such an instruction, of course, should not have been given.  It is also said that the court erred in refusing to give for defendant its tendered instructions Nos. 3 and 4.  Both of these instructions were abstract in form and we have often held it is never error to refuse such instructions.  However, they are

both wrong. By them it is sought to tell the jury that it was the duty of the driver of the wagon to keep a lookout in front of him. This might not be his sole duty under the circumstances, since he had an unusual load in the wagon.

Complaint is further made that the court permitted Dr. Harris to testify to the family history of plaintiff and in giving his opinion based partly on such history. On cross-examination of this witness, who was called by plaintiff, he was asked by counsel for defendant whether he took into consideration the family history, and on redirect it was brought out what the family history was. We think there was no error in this. While this witness was testifying he said he based his opinion partly on his own experience and partly on Keene's Surgery. He was then asked on direct examination: "Do you base your opinion also that ten to fourteen per cent of carcinoma cases could be traced to a blow from a traumatic origin from that work?" To this defendant objected and was sustained. On cross-examination the doctor's attention was called to a book known as Keene's Surgery. To this objection was sustained on the ground that when the plaintiff's counsel asked concerning it, objection was made and sustained. There was no serious error in this ruling. Moreover, we think the excerpt from that work tends to corroborate the doctor's testimony that there was some causal relation between trauma and cancer.

We have considered all the points made by counsel for defendant and are of the opinion that none of them would warrant a reversal of the judgment.

The judgment of the superior court of Cook county is affirmed.

*Affirmed.*

MR. JUSTICE TAYLOR concurs.

MR. PRESIDING JUSTICE THOMSON dissenting:
I am unable to concur in the foregoing opinion. The

burden was upon the plaintiff to prove by a preponderance of the evidence that the cancerous condition from which she suffered was the result of the injury complained of. In my opinion she clearly failed in this. She cannot recover on a guess or conjecture that the injury may have caused the cancer. But, before a verdict in her favor should be allowed to stand it should be supported by evidence tending to prove that it in fact did cause it. *Chicago Union Traction Co. v. Fortier*, 205 Ill. 305; *Albaugh-Dover Co. v. Industrial Board of Illinois*, 278 Ill. 179.

The precise question involved in the case at bar was recently before this court in *Bishop v. Chicago Telephone Co.*, 210 Ill. App. 347, which is referred to in the majority opinion. In that case the plaintiff's intestate was alleged to have been injured through defendant's negligence, having received a blow on the breast, following which a cancer developed from the effects of which he died. While the evidence in that case showed that the deceased had been suffering from other diseases which may have contributed to his death, as the majority opinion points out, a judgment recovered by the plaintiff was reversed by this court with a finding of fact to the effect, in part, that there was no causal connection between the injuries suffered by the plaintiff's intestate and his death by cancer. In that case, the medical evidence tending to support the plaintiff's theory was about as we find it in the case at bar, but the evidence for the defense here is much stronger than the evidence supporting the defendant in the case referred to. But, in that case this court said that the overwhelming weight of the evidence was against the claim that the cancer from which the deceased suffered and died was caused by the traumatic injury sustained by him. In my opinion there was even more reason for that conclusion in the case at bar.

As to the cases of *Shaw v. Chicago, R. I. & P. Ry. Co.*, 173 Ill. App. 107, and *Chicago Union Traction Co. v. May*, 221 Ill. 530, relied upon by the plaintiff and referred to in the majority opinion, it does not appear that there was evidence in either case to the effect that there was no relation between the trauma and any of the conditions complained of. In the case at bar, however, my opinion is that the greater weight of the evidence is clearly to the effect that there was no relation between the trauma and the cancer which was the single physical ailment complained of.