Floyd B. Ford, Plaintiff-Appellee, v. Panhandle Eastern Pipe Line Company, Defendant-Appellant.

Gen. No. 9,773.

 Opinion filed November 6, 1951. Released for publication December 3, 1951.

JOHN ALAN APPLEMAN, of Urbana, for appellant.

C. E. TATE, of Champaign, for appellee.

MR. PRESIDING JUSTICE O'CONNOR delivered the opinion of the court.

The plaintiff-appellee, Floyd B. Ford, hereinafter called the plaintiff, in June 1946, filed a complaint against the defendant-appellant, Panhandle Eastern Pipe Line Company, a corporation, hereinafter called the defendant, seeking damages resulting from an automobile accident occurring on January 18, 1946, upon Illinois State Route No. 36 near Hammond in Piatt county, Illinois. The defendant filed an answer to the complaint, and the case was tried in October 1948, before a jury in the circuit court of Champaign county, Illinois. On October 6, 1949, the jury returned a verdict for the plaintiff in the amount of $18,250, and a motion for judgment notwithstanding the verdict and in the alternative, for a new trial, was filed on October 14, 1949. This motion was argued, and on July 12, 1950 was overruled. Notice of appeal was filed October 5, 1950, appealing from the judgment orders entered by the trial court, and from the orders entered in the said motions.

The case resulted from a collision on January 18, 1946, involving the plaintiff's car and a tractor-trailer unit owned by the defendant and operated by its servant. The plaintiff was in the process of passing the truck on a highway when the truck made a left turn and the collision occurred.

The plaintiff was thrown from his car and sustained a bump on his head, a bruised small finger and a broken bone in his right leg above the ankle. He was in the hospital for a few hours while a cast was applied and was then taken home. He was unable to work for about three or four months and in the meantime employed a man to carry on his business of selling and he paid him a salary of $50 per week. X-rays were negative for fractures in the chest area. The ankle healed with no residual effect and the plaintiff was able to play golf during that following summer.

On May 3, 1948, approximately two years and three months after the accident, the plaintiff suffered a

567

cerebral thrombosis which resulted in his being totally paralyzed.

The important and principal question presented by this appeal is whether the trial court was correct in holding that there was sufficient evidence to create a question of fact as to the causal relation between the injuries received in the automobile collision and the permanent injuries and condition of the plaintiff existing at the time of the trial.

The defendant moved to strike all of the testimony relating to the paralyzed condition of the plaintiff due to the thrombosis, on the theory that the evidence had not established a causal connection between the accident and the state of ill health. This motion the court denied. The court further, on motion of the defendant, refused to instruct the jury not to consider the evidence of the condition of the plaintiff by reason of the thrombosis in arriving at its verdict.

█ If the condition was caused by the injury sustained in an automobile collision it should, of course, have been included as a part of the damages allowed by the jury in this case. If, on the other hand, there was no causal connection between the physical condition of the plaintiff and the automobile collision, the jury should not have been permitted to consider the cerebral thrombosis suffered by the plaintiff in arriving at their verdict.

In support of the contention that a causal connection has been proven between the accident and the cerebral thrombosis, the plaintiff must rely upon the following evidence.

Blanche Ford, wife of the plaintiff, testified that she knew him since a year and half prior to their marriage in 1923 and that before this accident her husband had enjoyed good health and had had no other injuries or accidents. He had suffered only from the common cold. Before this accident he had

played golf and was very quick and active. There was no drop in the left side of his mouth and he possessed a good memory. He was very congenial with members of his family and handled his own business affairs. She saw him immediately following the accident and arranged for him to be taken to the hospital. He appeared dazed and was limping badly and his clothes were covered with blood and bits of grass and he kept holding his chest and he had a large bump on his head and she claims that he did not talk right. After her husband was treated by a Dr. Zarcone she took him to their home and put him to bed. He appeared to be exhausted and was perspiring freely and he stayed in bed for two weeks, during which time he took the medicine which his physician had prescribed. Mrs. Ford observed what she described as shallow breathing on the part of her husband and an expression of pain on his face when he took a deep breath, and this type of breathing continued for some time. He became despondent and highly nervous and his color became sallow. She observed that he no longer had his happy attitude and was irritable with his son, and when they played golf that summer it was necessary for her to tee up the ball, as he would become overbalanced as he would lean over. She noticed that her husband limped that summer. She claimed he was not as irritable in the first part of 1947 as he was later in the year and that he was forgetful and could not recall where he had left various items of clothing, and on one occasion in the summer of 1947 he came home without the car and didn't know where it was. It was found the next day in the parking lot that he used. The above condition was continuous up to April of 1948, and on May 3, 1948 she found her husband sitting on the davenport in his home with his mouth all drawn down and his right eye pulled down to about one-half closed and his right arm and leg were useless. He

was extremely pale and was in shock. A Doctor High-smith was called and he was taken to the hospital. Later Mr. Ford saw a Doctor Kapernick and also a Doctor Oldberg in Chicago, and this history was furnished to them. On August 19, 1948 the plaintiff was seen by a Doctor Klemme, a specialist in neuro-logical surgery at St. Louis. Mrs. Ford testified that at the time of the trial her husband was despondent and irritable as compared with his condition before the accident, and he has a very difficult time to make himself understood.

In addition to this, five physicians or brain special-ists were called as witnesses by and testified on behalf of the plaintiff. Their testimony most favorable to the plaintiff relative to a causal connection between the accident and the brain injury is that they did not know of any natural cause of this condition, and one of the experts testified that this cerebral thrombosis could be caused by trauma. However, each of the five experts, on cross-examination, testified that in their opinion there was no connection between the accident and the cerebral thrombosis, which occurred two years and three months after the accident.

The five medical experts called on behalf of the plaintiff, together with Doctor Sexton called on behalf of the defendant, all agreed that the paralysis and asphasia of the plaintiff were produced by a cerebral thrombosis; that a cerebral thrombosis must develop within a period of twenty-four hours to three months, never as late as two years and three months, after an accident, and that there was, in their opinions, no causal connection between the accident and the plain-tiff's present condition.

The plaintiff has furnished many decisions to the effect that it is a jury question where the causal con-nection is proven by the plaintiff, yet disputed by the defendant. *Craw v. Chicago City Ry. Co.*, 159 Ill.

App. 100; *Devlin v. Chicago City Ry. Co.*, 210 Ill. App. 7; *City of Chicago v. Bush*, 111 Ill. App. 638; *Macon County Coal Company v. Industrial Commission*, 374 Ill. 219. These cases offer no guidance here. In all of them there was either a conflict in the medical testimony as to causal connection, or there was no medical testimony offered by the defendant. In the instant case all of the medical witnesses reach the same conclusion, that being that there was no causal connection between the thrombosis and the accident in which the plaintiff was involved. The lay witness, Mrs. Blanche Ford, only testified as to the plaintiff's condition before and after the accident.

 While the testimony of the plaintiff's wife, Blanche Ford, shows her husband's good health before the accident and the fact that she evidenced a change in him thereafter, there is nothing in the proof which permits the conclusion that these symptoms are indicative of an approaching thrombosis or that the thrombosis was caused by the accident. On the contrary, the evidence is that the entire process of a thrombosis requires less than three months to occur. Considering that this happened two years and three months after the accident it seems well established that the process of thrombosis could not have been in progress during that long period of time and that there is no connection between the accident and the paralysis. Where a cerebral thrombosis occurs two years and three months after an accident, the fact that the plaintiff was in good health before the accident and that no natural causes were shown causing such thrombosis is not sufficient to show causal connection without additional medical testimony.

There are many cases where a highly technical medical diagnosis is made of a person months following an accident and the court has required proof of the causal connection between the accident and the illness

because of the nature of the illness, and because of the lapse of time.

In *Ivanhoe v. Buda Co.*, 247 Ill. App. 336, the plaintiff received an electrical shock and thereafter he found himself subject to fainting spells which commenced two or three months after the injury. In that case the court said:

"Defendant further contends that the damages are not supported by the evidence for the reason that there is no medical testimony to the effect that plaintiff's alleged disability resulted from the electric shock. While it has been held that where it appears from the evidence that the plaintiff, in a personal injury case, was in good health before he was injured but in bad health afterwards, this may be sufficient to submit the case to the jury as to whether the disabilities complained of resulted from the injuries received, (*Chicago Union Traction Co. v. May*, 221 Ill. 530; *Rehthaler v. Crane Co.*, 218 Ill. App. 267), yet we are of the opinion that in the instant case, where the evidence shows that a considerable period after plaintiff was injured he began to have fits and fainting spells, some expert evidence ought to be adduced on the question as to whether his condition resulted from the injury. *Rose v. Chicago City Ry. Co.*, 207 Ill. App. 345."

In *Kelleher v. Chicago City Ry. Co.*, 256 Ill. 454, plaintiff fell while attempting to board a streetcar, striking his left side and wrenching his left wrist. Plaintiff testified that the wrist felt weak for a year after the injury. Three years after the accident a lump formed on the the wrist, and in a few months a bone splinter worked its way out. No doctor testified for the plaintiff as to the causal connection. The Supreme Court stated:

"The connection between the injury and the extrusion of the supposed bone is too remote to justify the inference that the latter was the result of the former,

in the absence of evidence that an injury of the character shown might produce such a result. It was a question upon which expert evidence might have been introduced, (*City of Chicago v. Didier,* 227 Ill. 571,) but none was introduced on the part of the plaintiff. . . . The motion to strike out the evidence was proper and should have been sustained.''

In *Raphael v. Chicago & W. T. Rys., Inc.,* 293 Ill. App. 58, the court reviewed other decisions of a similar nature and concluded in that case that while the evidence indicated that the plaintiff received an injury which caused her considerable suffering there was no evidence to sustain her claim that her colds, loss of weight and certain other conditions testified about, had any relationship to the injury received, through the alleged negligence of the defendant. In that case the attending physician definitely stated that he would not testify that such condition did result from such injury, which evidence is similar to the testimony in this case.

Of similar holding is the case of *Allison v. Chicago Transit Authority,* 336 Ill. App. 224, where there was no causal connection proved between the accident and the fibroid tumors in the plaintiff's uterus and the diseased condition of her Fallopian tubes and ovaries.

 In the instant case the testimony given by Blanche Ford, wife of the plaintiff, described conditions and disabilities different than existed before an accident. The accident which caused the original injuries occurred two years and three months before the plaintiff suffered a cerebral thrombosis, causing the conditions and disabilities described by the witness. Six medical experts, five of them being called on behalf of the plaintiff, testified that they could see no causal connection between the accident and the cerebral thrombosis, and that in their opinion the thrombosis could not have resulted from the accident. Under this

state of facts it was error to deny the motion to strike the evidence of present conditions and disabilities which were caused by the thrombosis.

The verdict clearly reflects an award of damages greatly in excess of what would be reasonable for the injuries which are obviously attributable to the accident. The trial court having permitted the jury to consider the paralyzed condition of the plaintiff caused by the cerebral thrombosis without proving a causal connection between that condition and the accident, was such error as necessitates that this case be retried and therefore it is unnecessary to consider the other errors assigned.

The cause is reversed and remanded for a new trial.
*Reversed and remanded.*