## Henry Engelman, Appellee, v. Chicago Transit Authority, Appellant.

### Gen. No. 44,561.

NIEMEYER, J., dissenting.

Opinion filed June 20, 1949.   Released for publication July 18, 1949.

WERNER W. SCHROEDER, WILLIAM S. ALLEN, HARRY I. PARSONS, and ARTHUR J. DONOVAN, all of Chicago, for appellant.

CHARLES T. SHANNER and ARMAND CHIAPPORI, both of Chicago, for appellee; CHARLES T. SHANNER, of Chicago, of counsel.

MR. JUSTICE TUOHY delivered the opinion of the court.

Plaintiff brought suit to recover for personal injuries and property damage alleged to have been received in a collision between defendant's streetcar and plaintiff's automobile which occurred on June 14, 1946 on Michigan avenue, between 108th and 109th streets, in Chicago.  From a judgment on a verdict for $5,000, defendant appeals.

Plaintiff contends that while driving his automobile between the rails in the defendant's northbound streetcar track at a speed of 10 or 12 miles an hour he was struck from behind by defendant's streetcar.

Defendant contends that while the streetcar was proceeding north on Michigan avenue the plaintiff suddenly drove his automobile in a northwesterly direction out from the curb and onto the streetcar track, and that in the exercise of ordinary care the motorman was not able to stop in time to avoid a collision.  Defendant assigns as error (1) that the verdict is against the manifest weight of the evidence; (2) that the damages are excessive; and (3) that there was error in the giving of instructions.

Michigan avenue, at the place where the accident happened, is a paved street about 40 feet wide.  There are two streetcar tracks, one for north and the other

for south bound traffic. Plaintiff had been shopping at an electrical shop about one-third of a block north of 109th street on the east side of Michigan avenue, and his car was parked a little to the south of the electrical shop. Plaintiff testified that upon finishing shopping he got into his car, looked back and saw the streetcar which was involved in the accident standing on the south side of 109th street; that there were automobiles parked close along the curb on the east side of the street; that he pulled out from the curb and had driven about 180 or possibly 200 feet in a northerly direction in the northbound streetcar track when he saw an elderly lady carrying packages coming from the west side of the street crossing to the east and he swerved over, possibly three feet, to the west so as to drive behind her; that before swerving to the west he was astraddle of the east rail of the northbound track; that at the time he turned to the left he was going about 10 or 12 miles an hour and was practically astraddle of the west rail, having traveled about 30, 40 or maybe 50 feet (after he swerved to avoid the woman), when he was hit in the rear by the streetcar; that he did not hear any bell or gong; that as he felt the impact he was pushed forward and snapped back and fell sideways against the door posts of the automobile; that the impact pushed the automobile ahead and around until it was facing southwest. A witness who operated a funeral parlor testified that he saw the streetcar push the automobile for about 10 feet and when he first saw it being so pushed it was about 15 feet south of his chapel. Another witness who operated a barber shop, which was separated from the funeral parlor by a vacant lot, testified that he saw the plaintiff driving in the northbound streetcar track as the plaintiff passed his shop. His evidence is that between the electrical shop where the automobile was parked when it was driven onto the car track and the point of collision there were the following: a real estate office, a bank, a

jewelry store, an optical store, a sign painting shop, a barber shop, a vacant lot, and funeral parlor. The testimony was offered for the purpose of corroborating the plaintiff as to the distance traveled prior to being struck by the streetcar. Another witness testified that he saw the plaintiff's automobile when it was in front of the premises one house number south of the barber shop and that it was then in the middle of the car track. This witness testified that while the plaintiff's automobile was in this position he saw a streetcar bearing down from the south going the same direction that plaintiff was and that the streetcar was then about 70 or 75 feet from the automobile and going about 25 miles an hour; that the collision occurred about 5 or 10 feet south of the undertaking parlor; that he did not hear any gong sound before or at the time of the collision.

For the defendant, a passenger on the streetcar testified that as he arrived at the front platform of the car he saw the automobile which was parked on the east side of the street leave the place where it was parked and come toward the track; that the streetcar was about 30 feet away when the automobile pulled out from the curb toward the streetcar track; that the streetcar traveled about five feet after the accident before it was stopped; that the automobile was going about "due northwest" and continued to go "due northwest until the time of the collision"; that the gong was sounded on the streetcar. The motorman testified that as he came to the middle of the block the automobile suddenly pulled out from the curb; that he was about 20 to 25 feet away; that he pulled the reverse, applied his brakes and sand and did everything possible to stop the car, but it was too short a distance and he struck the car around the rear left side and fender and stopped. The conductor testified that he did not see the accident but that his attention was attracted by the screeching of brakes and the

sudden stop. Another passenger on the streetcar testified that he was on the front platform waiting to alight; that the streetcar was going about 20 miles an hour and the automobile turned out right in front of the streetcar; that the streetcar went a couple of feet after the accident before it stopped; that the automobile was never out in front of the streetcar or running on the track. These were all the eyewitnesses to the accident.

■■ Photographs of the car were introduced in evidence by the plaintiff which show the principal damage to have occurred in the back and to the rear left fender of the automobile. There is no damage apparent from the pictures to the right fender. The above testimony is therefore in sharp conflict as to the facts bearing upon liability. It is urged that the testimony of the two disinterested passengers, together with the photographs, establishes conclusively that the accident occurred as these witnesses testified. However, if the testimony of plaintiff's witnesses is to be believed that the automobile at the time of the impact was proceeding in a northwesterly direction by virtue of the change of direction in order to avoid striking the elderly woman and that the automobile was pushed ahead by the streetcar for 15 or 20 feet before the streetcar was stopped, then the fact that the automobile was damaged in the rear and the left fender would not necessarily be inconsistent with the facts as plaintiff's witnesses stated them to be. The testimony of defendant's witness Tillery is corroborative of this proposition inasmuch as he testified, "It [plaintiff's automobile] was going about due northwest and continued to go due northwest until the time of the collision." Under all these facts and circumstances we believe that the question of fact presented was for the jury to decide, and we are unable to say that the finding of liability is against the manifest weight of the evidence.

The plaintiff testified that immediately after the occurrence he experienced pain in his back, shoulders and head; that prior to the accident his health was good and he had not had any trouble in the respect complained of after the accident; that he was confined to his home for two weeks; that when he returned to work his back was stiff and his legs were sore; that at the time of the trial "I still have a lame feeling in the back, I can't sit still any given length of time, I move continuously, and I can't lay in any one position for any length of time, because the ache in the back is grating and that just persists"; that since returning to work he has had three or four sick leaves of a day or two and had to take a week off in August because of the pain in his back; that immediately after the accident he was driven to Dr. Karabin's office where, among other things done, his back was taped up; that the following day X-rays were taken at Roseland Community Hospital; that subsequently he saw Dr. Karabin four or five times during a period of two weeks; that between the date of the accident and the time of the trial he lost 27 pounds; that in July of 1947, X-ray films were taken by Dr. Zeitlin and the earlier films which were taken at the Roseland Community Hospital were also given to him. Dr. Zeitlin, an X-ray specialist, testified that from his reading of the X-ray pictures the plaintiff had suffered from a fracture of the facet process of the fourth lumbar vertebra; that such a fracture can be an adequate cause for pain and that it could be caused by a sudden backward motion of the spinal column. Dr. Turner examined the same X-ray films and testified on behalf of the defendant that he found no evidence of the chip fracture testified to by Dr. Zeitlin, but that he found an outgrowth which was the result of osteo-arthritis.

Dr. Karabin, the attending physician, did not testify. Comment is made in appellant's brief that the failure of a party to produce evidence available to him gives rise to a presumption that such evidence would

be unfavorable. An effort was made to account for the absence of Dr. Karabin in this fashion: "Q. Now, Mr. Engelman, night before last, did you talk to Dr. Karabin with reference to his coming to Court yesterday? A. I did. Q. At that time what did he say with reference to his attendance in Court yesterday?" There was an objection which was sustained and no further offer of proof appears in the record. There was competent medical evidence before this jury, even though based on the testimony of a single doctor, that plaintiff had suffered a fracture of the facet process of the fourth lumbar vertebra and that such an injury is an efficient cause of pain. Under such circumstances, we are unable to say that the amount awarded is so excessive as to show that it was the result of prejudice, passion, sympathy, or a misconception of the evidence which could have entered into the finding on the question of liability.

It is argued that no causal connection is shown between the accident of June 14 and the fracture of the vertebra. The jury were entitled to believe that before the accident the plaintiff was in good health and that after the accident he suffered pain in the region where this fracture was located. There was testimony that the fracture could be caused by a violent backward motion and the plaintiff testified that at the time of the accident he "was pushed forward and snapped back, and I fell sideways against the door posts." The fact that the doctor was not specifically asked the question as to whether or not in his opinion there was a causal connection between the accident and the condition of ill-being of which plaintiff complained is not controlling. In the case of *Chicago Union Traction Co. v. May*, 221 Ill. 530, where no doctor testified that the conditions found were or could have been caused by accident, the court said at page 536:

". . . We think it was a correct practice for the court to permit appellee to prove the condition of her health at and prior to the time she was injured, and

then to follow up that proof by showing her physical condition from the time of her injury down to the time of the trial, and to submit the question of the cause of her then physical condition, as a question of fact, to the jury under proper instructions, which was the course of procedure followed in this case. . . ."

A similar holding is contained in *Heil v. Kastengren,* 328 Ill. App. 301.

We have carefully examined the instructions complained of and an analysis of each would unduly extend this opinion. Suffice it to say we find no reversible error in the giving of any of plaintiff's complained of instructions.

For these reasons the judgment of the superior court of Cook county is affirmed.

*Affirmed.*

FEINBERG, P. J., concurs.

NIEMEYER, J., dissenting: Plaintiff testified that he turned his automobile from the east curb of the street where it was parked onto the street railway and proceeded north from 150 to possibly 200 feet when he swerved over to the west possibly three feet to drive behind a woman crossing the street from west to east; that he was then "practically astraddle the west rails"; that he traveled in that position 30 to 50 feet when struck by the streetcar. He is corroborated to some extent by three witnesses, two of whom were attracted to the collision by the noise. The motorman and two passengers on the front platform testified that defendant turned from his place at the east curb and was moving across the northbound track in a northwesterly direction when struck by the streetcar. One or more of these witnesses knowingly and wilfully testified falsely. In the absence of uncontrovertible evidence as to physical facts effectively discrediting the testimony of plaintiff, the verdict of the jury should not be disturbed. Plaintiff introduced in evi-

dence two photographs of his damaged automobile. These photographs show the left rear fender, from its extreme end to the commencement of the running board in front of the left rear wheel, crushed in toward the body of the car and a mark showing an abrasion across the left rear door. The door to the luggage compartment in the rear is pushed upward and to the right, the lower edge being elevated at an angle of about 45 degrees, with the lower right corner raised and pushed to the right. The photographs show no damage to the rear bumper. These photographs corroborate the testimony of the motorman and the two passengers. The damages shown by the photographs could not possibly have been caused by a collision with the streetcar if plaintiff, as testified to by him, was traveling practically "astraddle" the west or left rail of the northbound track. The verdict, therefore, is manifestly against the weight of the evidence and the judgment should be reversed and the cause remanded.