ROBERT RIEHL et al. Appellees, vs. CHARLES RIEHL, Appellant.

Opinion filed December 21, 1910.

1. EQUITY—trial of feigned issue in chancery case is merely advisory. The formation and trial of a feigned issue in a chancery case, such as the question whether the grantor in a deed sought to be set aside in a partition proceeding was of unsound mind, is merely advisory to the chancellor, who may render a decree in accordance with the verdict, or, without setting it aside, render a decree contrary thereto.

2. APPEALS AND ERRORS—when alleged error in rulings on evidence is unimportant. Alleged error in the admission of evidence in a chancery proceeding is unimportant if there is competent evidence in the record sufficient to sustain the decree and the incompetent evidence would not, if considered, change the result.

3. SAME—when question on appeal is whether decree properly disposes of the cause, considering the entire record. Where a decree in a chancery proceeding for partition and to set aside a deed appears on its face to have been based not only upon the verdict but also upon the pleadings, exhibits, files and proofs submitted in evidence, the question presented upon appeal is whether the decree properly disposes of the case, considering the entire record, and not whether there was error in rulings on evidence on the trial of the feigned issue. (Guild v. Hull, 127 Ill. 523, distinguished.)

4. DEEDS—when deed is properly set aside for lack of mental capacity by grantor. It is proper for the chancellor to set aside a deed where the evidence establishes that the grantor had been a victim of melancholia for several years prior to the execution of the deed; that the disease progressed gradually until he was committed to an insane asylum for treatment and that at the time the deed was executed he was still suffering from his mental malady, though no witness testified to his mental condition on the morning the deed was executed except the notary, whose recollection of the transaction was very general and who testified that he saw nothing unusual in grantor's actions and thought he understood the deed.

APPEAL from the Circuit Court of Monroe county; the Hon. LOUIS BERNREUTER, Judge, presiding.

JOSEPH W. RICKERT, for appellant.

CHARLES MORRISON, and A. C. BOLLINGER, for appellees.

Mr. CHIEF JUSTICE VICKERS delivered the opinion of the court:

This is an appeal from a decree of the circuit court of Monroe county finding the interests of the parties in the real estate involved and granting a partition thereof among the respective owners. The real estate involved, consisting of about 52.75 acres, originally belonged to Mrs. Fendrich, the mother of the appellant and appellees. The mother died October 26, 1893. At the time of her death she left surviving her as her only heirs four children, Charles, Robert and Joseph Riehl, her sons, and Mrs. Amalie Kroman, a daughter. Charles Riehl purchased the undivided interests of Robert Riehl and Mrs. Kroman. On January 27, 1894, Joseph Riehl executed a deed of his one-fourth interest to his brother Charles for the express consideration of $365. After the death of Joseph Riehl, which occurred in September, 1907, appellees, Robert Riehl and Mrs. Kroman, filed the bill in this case, alleging that they were each the owner of a one-twelfth undivided interest in the real estate in question as heirs of their brother, Joseph Riehl, and alleging that at the time of the execution of the deed of January 27, 1894, the said Joseph Riehl was of unsound mind and incapable of executing the deed, and that the execution thereof was procured through fraud and undue influence practiced upon said Joseph Riehl by Charles Riehl, the grantee, and that the consideration for said conveyance was wholly inadequate. Charles Riehl answered the bill, denying that Joseph Riehl was of unsound mind at the time of the execution of the deed in question or that the same was procured through undue influence or other improper means. The circuit court caused an issue at law to be made up as to the mental capacity of Joseph Riehl, which was by direction of the court submitted to a jury. The jury, after hearing the evidence and being instructed by the court, returned a verdict finding that the deed in question was not the deed of Joseph Riehl. A motion for a new trial was

made and overruled, to which exceptions were preserved. Thereupon the court rendered the decree from which this appeal is prosecuted, which recites that it is based upon the pleadings, the verdict of the jury, and the exhibits, files and proofs submitted in evidence. The decree shows, upon its face, that the court specifically found all of the material facts necessary to sustain the decree rendered. It is the reversal of this decree which Charles Riehl seeks by his appeal to this court.

Most of appellant's assignments of error relate to the rulings of the court upon the admission and exclusion of evidence during the trial of the feigned issue by the jury, and the instructions of the court given and refused. The rule which is applicable to the trial of chancery proceedings is, that any error which may have been committed in rulings upon the admission or exclusion of evidence is unimportant if there is competent evidence in the record sufficient to support the decree, and that the evidence which ought to have been considered would not, if considered, change the result. The question in such case is whether or not, upon the whole record, substantial justice appears to have been done to the parties. (*Treleaven* v. *Dixon,* 119 Ill. 548; *Shedd* v. *Seefeld,* 230 id. 118.) Under the chancery practice which prevails in the English courts of chancery and in this State, the formation and trial of a feigned issue by a jury is merely advisory to the chancellor and the verdict upon such issue is not binding upon the court. (*Fanning* v. *Russell,* 94 Ill. 386.) In such case the parties are entitled to the judgment of the chancellor upon the issues of fact in the case. If the court is satisfied with the verdict he may adopt it and render a decree in accordance therewith, or he may, without setting aside the verdict, render a decree contrary thereto. In Daniell's Chancery, (vol. 2, p. 1305,) it is said: "Upon the trial of an issue a bill of exceptions for an alleged misdirection of the judge will not lie, but the regular course is to apply to the court which

directed the issue, for a new trial. Under the English chancery practice the feigned issue was sent to a law court for trial, from which the evidence and the verdict were certified back to the court of chancery. If a motion for a new trial was made, it was made in the chancery court and not in the law court. If a new trial was applied for in the chancery court and denied upon an appeal from the decree, the question was not whether there had been errors in the trial of the feigned issue, but the question was, upon the whole record, whether the decree of the chancellor was right."

This rule is applied by the Supreme Court of the United States. (*Johnson* v. *Harmon,* 94 U. S. 371.) In disposing of that question in the case above cited, Mr. Justice Bradley, on page 372, said: "The issue is directed to be tried for the purpose of informing the conscience of the chancellor and aiding him to come to a proper conclusion. If he thinks the trial has not been a fair one, or for any other reason desires a new trial, it is in his discretion to order it. But he may proceed with the cause though dissatisfied with the verdict, and make a decree contrary thereto, if in his judgment the law and the evidence so require. A decree in equity, therefore, when appealed from, does not stand or fall according to the legality or illegality of the proceedings on the trial of a feigned issue in the cause, for the verdict may or may not have been the ground of the decree. It is the duty of the court of first instance to decide (as was done here) upon the whole case, pleadings, evidence and verdict, giving to the latter so much effect as it is worth. An appeal from the decree must be decided in the same way, namely, upon the whole case, and cannot be made to turn on the correctness or incorrectness of the judge's rulings at the trial of the feigned issue."

Appellant relies on the case of *Guild* v. *Hull,* 127 Ill. 523, as establishing a different rule. In that case the decree was based exclusively upon the verdict, as the following

recital will show (p. 530) : "And being fully advised in the premises, and having overruled the motion to set aside said verdict and for a new trial, as aforesaid, doth order and decree that a *pro forma* decree, and *pro forma* only, be entered in said cause in pursuance of said findings of the said jury, and not otherwise," etc.   In disposing of that case this court did consider errors assigned upon the rulings of the court during the trial of the feigned issue, but that was only because the language of the decree showed, affirmatively, that the court did not act upon its own independent judgment.   This court in that case used the following language: "As the decree is based on the verdict of the jury alone, and not upon any independent judgment of the circuit court, it must follow that if the finding of the jury was the result of or was influenced by the admission of improper evidence or by improper instructions given by the court, the decree should be reversed."

The decree in the case at bar is not based upon the verdict of the jury alone.   It appears from the recitals of the decree already set out that it was the result of an independent consideration of the evidence by the court in connection with the verdict of the jury.   That being true, the practice sanctioned in the *Hull case* cannot be followed here.   The question, therefore, to be determined upon this appeal is whether the decree finding that Joseph Riehl was of unsound mind at the time the deed was executed to appellant, and setting the same aside, properly disposes of the cause when the entire record is considered.

The evidence submitted to the jury, and upon which its verdict as well as the decree of the court is based, tends to establish the following facts:   Joseph Riehl, the grantor in the deed in question, resided on the farm in question with his mother and step-father until his mother's death.   He was about twenty-six years of age at that time.   He had never been married.   After his mother's death the farm was rented.   The evidence shows that the grantor, Joseph Riehl,

was able to do some farm work prior to his mother's death. He was a man of good physical health and able to do any kind of labor so far as mere physical strength was concerned. About the year 1891 the evidence shows that he began to show signs of melancholia and that these manifestations continued to become more marked,—so much so that at the time his mother died, in 1893, he had practically ceased trying to do anything in the way of labor upon the farm. He had been under treatment of various physicians but his condition had not improved. In November, 1893, he went to St. Louis and consulted Dr. Charles Richter. Dr. Richter saw him three times during the month of November. The doctor testifies that he found it very difficult to get any clear view of his case because of his unwillingness to answer questions. Riehl at that time complained of headaches and pains and said that he felt restless, but his description of his condition was indefinite and unsatisfactory. The physician testifies that he concluded that he was suffering from some mental disturbance. On the occasion of the third visit to Dr. Richter he was able to get a clear statement from Riehl and made a careful examination and found him suffering from melancholia. Dr. Richter did not see Riehl again until in September, 1894, when he visited him in an insane asylum in St. Louis where Riehl was confined. Dr. Richter says, from the condition which he found in November, 1893, it was his opinion that the disease had been of long standing. When the doctor examined him in 1894, in the asylum, he was entirely irrational. Basing his opinion upon the condition he found in the fall of 1893 and his subsequent condition in 1894, Dr. Richter testifies that Riehl was suffering from a true case of melancholia, from which he had not in any degree recovered.

Joseph Scharfenberger testified that he was well acquainted with Joseph Riehl for a number of years prior to the time when the deed in question was executed. He worked on the same farm with Riehl during the early nine-

ties.  The witness testifies that Riehl would walk around in the fields during harvest time, when the weather was very hot, wearing boots and heavy clothes and a big fur cap; that during these times Riehl would complain of not feeling well, and would go to the house and go to bed with his clothes on and cover up with a feather bed.  He testifies that Riehl wore an overcoat during the hot weather. From his conversations and actions this witness says that Joseph Riehl was not mentally competent to transact ordinary business; that in his opinion he would not be able to understand a transaction involving the execution of a deed.

Frank Noelke, who lived near Riehl, testified that he saw Riehl frequently in the summer time wearing a fur cap and a heavy overcoat; that he saw him in bed with his clothes on; that he would walk aimlessly about over the place, more frequently at night.  This witness also gives it as his opinion that he was totally unable to transact any ordinary business.

Mrs. Kroman, a sister of Joseph Riehl, testifies that her brother Joseph was suffering from some mental trouble before the death of their mother and that he gradually grew worse; that he would wear his winter clothing, including an overcoat, during the summer time, and that he would never take off his clothing when going to bed; that he did not shave or have his hair cut; that his hair was eighteen inches long and he wore a long beard.  This witness resided in St. Louis.  She testifies that her brother would spend a part of his time at her house and a part of the time at his home in Waterloo.  She testifies that she was at her mother's home when she died and remained there after the funeral three or four weeks, during which time she was frequently with her brother; that he was then mentally incompetent to attend to any business; that he gradually grew worse until the fall of 1894, when he was placed in an insane asylum in St. Louis.  She testifies that he would sit up at night and write letters, but instead of mailing them

he would hide them behind the washstand, tables, etc. This witness testifies that she sold her one-fourth interest in the farm to her brother Charles (the appellant herein) ten or twelve years before for $1000, and that her brother Joe's interest was worth the same as hers.

Robert Riehl, a brother of Joseph and one of the appellees herein, testified to substantially the same state of facts. He testified that his brother would wear the same clothing for five months and that they were unable to get him to change his clothing; that he did not take off his clothing at night, but slept with the same clothing on that he wore during the day.

These and other witnesses testify to the unusual conduct of Joseph Riehl. It is shown by the evidence that he would go out in the field and walk in a circle; that he would stand for hours in the same place, looking at the sun, and claim that he saw circles around the sun which would bring him good luck. He would attempt to point out to others the circles which he saw around the sun, but no one else could see them.

Charles Riehl, the appellant, resided in St. Louis. On the morning of January 27, 1894, at about three or four o'clock in the morning, Joseph Riehl came to appellant's house. It was dark and the family were not yet up. He was admitted. The evidence is not very clear as to the occurrences that took place on the morning the deed was executed. The appellant was incompetent to testify, and the only persons who do testify as to the occurrences attending the execution of the deed are appellee Robert Riehl, a son of Charles Riehl, and the notary public who took the acknowledgment. The notary testifies that the deed was read to the grantor and that he thought he understood it; that he took his acknowledgment in the usual manner and saw nothing to excite his suspicions as to the mental condition of the grantor. From the evidence of the notary it is apparent that he only has a very general recollection of

the transaction. On behalf of appellant no expert witness testifies. A number of lay witnesses testify to their acquaintance with Joseph Riehl and to his ability to transact the ordinary business affairs of life during the two or three years preceding the execution of this deed. It is shown that on one occasion he paid men who helped to thrash wheat on the farm; that he himself assisted in the thrashing, and that he returned the labor of some of the hands by helping them to thrash their wheat. It appears from the evidence that he was brought before the county judge of Monroe county upon a complaint that he was insane and an examination was had before Judge Erd and a jury, which resulted in a verdict finding that he was not insane. The date of this inquest is not definitely stated in the record. It is proven on behalf of appellant that Joseph Riehl was able to travel from one place to another unattended; that it was not thought necessary for anyone to look after him in going from his home to St. Louis or other places where he might desire to go.

The foregoing is the substance of all the evidence heard. There is no controversy over the value of the interest conveyed by Joseph Riehl to appellant. It was worth at least $1000. The consideration paid was $365. Under the evidence we are convinced that Joseph Riehl was a victim of melancholia; that he had been suffering from this disease for several years before his mother's death; that he gradually grew worse, until finally he was committed to an insane asylum for treatment; that at the time the deed was executed he was still suffering from this mental malady. While none of the witnesses are able to swear what the condition of his mind was on the morning the deed was executed, still that may reasonably be inferred from the nature and progressive character of his disease. In our opinion the decree of the court setting aside this deed as a cloud upon the title of appellees is sustained by the evidence.

The decree of the circuit court will therefore be affirmed.

*Decree affirmed.*