Eleanor Heil and Edward Heil, Appellees, v. Harold S. Kastengren, Administrator of Estate of Joe Nigro, Deceased, Appellant.

Gen. No. 43,578.

302

Opinion filed March 11, 1946.   Released for publication March 25, 1946.

C. E. HECKLER and BURT A. CROWE, both of Chicago, for appellant; C. E. HECKLER, of Chicago, of counsel.

GUY C. GUERINE, of Melrose Park, for appellees; WILLIAM McKINLEY and PAUL E. PRICE, both of Chicago, of counsel.

MR. JUSTICE O'CONNOR delivered the opinion of the court.

About 10 A. M. on February 8, 1944, Eleanor Heil was riding beside her husband, Edward Heil, in his automobile which was being driven north by Edward in 19th avenue, Maywood, Illinois. At that time Joe Nigro, since deceased, was driving east in his automobile in St. Charles Road, Maywood. His sister-in-law Beatrice Nigro was in the automobile. The cars collided at the intersection of the two streets injuring Eleanor and damaging Edward's automobile. She brought suit to recover damages for personal injuries sustained and Edward brought suit to recover property damage to his automobile, claimed to have resulted from Nigro's negligence. The suit was brought March 25, 1944. Nigro filed his answer denying the charges of negligence made against him and filed a counterclaim against Edward Heil charging him with negligence and wanton misconduct, as a result of which he was injured and his automobile damaged. Damages of $250 were claimed for the repair of defendant's automobile and his damages laid at $2,500. Edward filed his answer to the counterclaim denying that he was in any way liable.

May 21, 1945, an order was entered suggesting the death of Joe Nigro and substituting his administrator in his stead. The case went to trial June 5, 1945. In the complaint and counterclaim each charged the other

with negligence and with wilful and wanton miscon-
duct. Before the trial plaintiffs withdrew the latter
charge and defendant withdrew the counterclaim. The
jury rendered two verdicts, one in favor of Eleanor
for $2,700 and the other in favor of Edward for $285;
judgment was entered on the verdicts and the defend-
ant administrator appeals.

There were "stop" and "go" lights at the intersec-
tion of the two streets and plaintiffs' position is that
as they approached the intersection the green light was
in their favor and the red light against defendant, and
that defendant ran through the red light causing the
collision. On the other hand defendant's theory is
that as Nigro approached the intersection the green
light was in his favor but that plaintiffs drove through
the red light, as a result of which the collision oc-
curred. Since Nigro died prior to the trial, neither of
the plaintiffs could testify as to how the accident oc-
curred. § 2, ch. 51, Ill. Rev. Stat. 1945 [Jones Ill.
Stats. Ann. 107.068].

There were five eyewitnesses to the accident; two of
these, Mack Hankerson and Henry Lambrecht, were
called by plaintiffs; Orville J. Johnson, Anthony A.
Theodore and Beatrice Nigro, by defendant.

Hankerson testified that he lived in Maywood and
was employed by the National Malleable Steel Com-
pany in Melrose Park; that he witnessed the accident;
that he was driving west in his automobile on St.
Charles Road and stopped when he reached the inter-
section of 19th avenue for the red light; that he saw
defendant's car coming east on St. Charles Road about
40 miles an hour. "The car going east on St. Charles
Road come right through the light. I stopped for the
light. The light was red."

Henry Lambrecht testified that he lived upstairs in
the building located at the southwest corner of the
street intersection; that he was a bartender and

worked in Maywood; that he witnessed the accident; that there were two poles, one on the southwest corner and one on the northeast corner, equipped with stop and go lights; the weather was fair, no snow or ice; that he walked to the corner and wanted to go across the street on the north side of St. Charles Road. That as he started across St. Charles Road he saw a car coming east, but it did not slow down; that he stopped at about the middle of the street and the car passed in front of him; that the lights for St. Charles Road were red; that he saw Heil's car going north on 19th avenue. Just after the collision he saw Mr. Heil taking a woman out of the car and carrying her into the clinic which was next door. These two witnesses further testified as to their opinion of the speed of the two automobiles and as to how they came together at the street intersection, etc.

Orville J. Johnson testified that he lived at 4937 West Chicago avenue, Chicago, and was agent for the Prudential Life Insurance Company; that he witnessed the accident; that he drove in his automobile and parked his car facing north on 19th avenue, south of the intersection; that he saw both automobiles before the accident; that the streets were dry and the weather fairly nice; that he was getting out of his automobile and plaintiffs' automobile "came at a pretty good clip. It was coming from the south." That it was in about the center of the street and from 10 to 20 feet from the witness. It passed his car at a speed of from 28 to 35 miles an hour; that he also saw the car going east on St. Charles Road. "The condition of the stop and go light at the corner and at the time that car went into St. Charles Road was amber. I saw the other car coming from the west. It was in about the middle of the street at the crossing. The color of the lights was amber." That Nigro's car was going from 20 to 23 miles per hour and then they col-

lided near the center of the intersection; the car coming from the south struck the car going east on the rear right-hand side.

Anthony A. Theodore testified that he had a refrigeration and service station at the southwest corner of the intersection; that he was standing in the window and kept his eye on the car coming from the west and watched him cross the street. "He had the sign that said go for him." That car was traveling about 20 miles an hour; that the light was green for St. Charles Road. The speed of the northbound car (plaintiff's) was from 35 to 40 miles an hour; that the light for this traffic was red for the car going north; that he did not know the people in either car. The car going north hit the rear wheel of the car going east.

Beatrice Nigro testified that at the time of the accident she was riding with Joe Nigro, her brother-in-law. That she lived in Aurora at 539 Filter avenue on a farm with her husband, Michael Nigro; that Joe was taking her to a beauty parlor and they were driving east, very slowly in the center of the street, on St. Charles Road; that she was sitting in the rear on the right-hand side; that as they came up to 19th avenue the stop and go lights were green for them; that she saw a northbound automobile on 19th avenue about the distance of the court room away, coming very fast; that she noticed a man and woman in the northbound car. "The man had turned his head." That the northbound car struck their back fender.

■■ Counsel for defendant contend that plaintiffs failed to prove they were in the exercise of due care and caution for their own safety before and at the time of the accident and that the court should have directed a verdict in defendant's favor as requested at the close of all the evidence. We think this contention cannot be sustained. There was a direct conflict in the evidence as to the stop and go lights. There is also evidence that plaintiffs were not driving as fast as

Nigro at and before the accident. We are further of opinion that we would not be warranted in saying that the verdicts are against the manifest weight of the evidence as counsel contend. The jury saw and heard the witnesses testify as did the trial judge; the verdicts were in plaintiffs' favor; they were approved by the trial judge who also saw and heard the witnesses. In these circumstances we would not be warranted in disturbing the verdicts and judgments on the ground that they are manifestly against the weight of the evidence.

Defendant further contends that the court erred in permitting Dr. Hubbard, called by plaintiffs, to testify in reference to certain matters. He was the first witness on the trial and testified that he treated plaintiff, Eleanor Heil, on February 8, 1944, when she came into their clinic located in Maywood; that there were two lacerations on her chin and severe contusions on the left thigh just below the hip; that he sewed up the lacerations on her chin; that X-ray pictures were taken of her thigh on which there were no external lacerations; that after a month he saw her and the thigh was improved but was still painful; that he saw her again the day before the trial (which was about 16 months after the accident;) that when he saw her about a month after the accident the lacerations on the face had healed very nicely; leaving scars, but a good union and not very noticeable; the thigh at the time was still painful and a certain amount of swelling remained. It was still swollen, tender and discolored. "My opinion is that a thigh of that sort would make any prolonged use for standing or walking quite uncomfortable. I examined her the other day. The swelling and discoloration had disappeared but there remained a lump about the size of half a grapefruit on the posterior lateral aspect." The doctor was then asked if he had any opinion as to what kind of treatment could be used in such a condition. Objection was

overruled. He answered that the lump from external appearances was one for surgery; that it was impossible to tell definitely what it is. He then testified as to what would be the proper treatment and was asked by counsel for plaintiffs as to whether he had an opinion, based upon reasonable medical certainty, whether the condition he found might be the result of trauma. The objection was overruled and the answer was "yes." Of course there was no merit in this question or the answer as was later developed by the testimony of Mrs. Catherine Heil, Eleanor's mother-in-law, whose testimony was inadvertently left out of the record filed in this court. And counsel for defendant's argument is based on the record as originally filed. However, the testimony of Mrs. Heil was later supplied and an additional abstract filed. This testimony is to the effect that Eleanor was a healthy woman and had nothing wrong with her leg prior to the accident; that she was employed at the Buick Plant and had to do quite a bit of walking and was earning $30 a week; that shortly after the accident her son, Edward, the plaintiff, carried Eleanor, his wife, into the witness's home; that her chin was sewed up and that she had a lump on her leg as big as a football; that she looked at the leg, it was unbandaged; the chin was bandaged; that Eleanor stayed for a week during which time she was in bed; that at the end of the week her husband carried her out to the car and took her to their home on 19th avenue, Maywood; that the witness went there for about 3 weeks to do the work Eleanor was not able to do. "I just helped her, took her under my arm to the bathroom." That the second day after the accident Eleanor's family physician, Dr. Grunt, came to the house; he came afterwards several times; that Eleanor recently showed the witness her leg; that "Her left thigh is still kind of big there. I saw the thigh before the accident, there was nothing on it." In these circumstances obviously it was not necessary

to have the opinion of a doctor as to whether the injury to the thigh resulted from the accident. *Chicago Union Traction Co. v. May,* 221 Ill. 530; *Cons. Coal Co. v. Ind. Com.,* 320 Ill. 171; *Rehthaler v. Crane Co.,* 218 Ill. App. 267; *Ivanhoe v. Buda Co.,* 247 Ill. App. 336; *Griswold v. Chicago Rys. Co.,* 253 Ill. App. 498.

Defendant further contends that the court erred in permitting plaintiff, Eleanor, to testify because Joe Nigro had died since the accident and she was incompetent under section 2 of the Evidence Act. In support of this counsel discuss the evidence as to Dr. Hubbard but no mention is made of the testimony of Catherine Heil which was later supplied, as above stated.

Section 2, of the Evidence Act, provides that no party to any civil action shall testify, etc., when the adverse party sues or defends as administrator, etc., except: "a party or interested person may testify to facts occurring after the death of such deceased person." Eleanor testified to nothing except to describe the condition of her thigh at the time of the trial. We think there was no error. Moreover, her testimony was but cumulative because Dr. Hubbard had testified to the same facts.

Over objection he further testified as to the nature of the treatment that might be necessary on Eleanor's thigh; that if there were such an operation a reasonable charge would be about $100; that the patient would be required to be at the hospital about 2 weeks at $4 a day for the hospital bill. This evidence was clearly speculative and inadmissible. *Lyons v. Chicago City Ry. Co.,* 258 Ill. 75; *Wolfstein v. Ill. Power,* 254 Ill. App. 362. But since we are of opinion that the verdict and judgment of $2,700 is in no way excessive, we would not be justified in reversing for the admission of this evidence.

Defendant further contends that since the answer charged the plaintiffs with wilful and wanton

misconduct and they failed to reply, this amounted to an admission that they were guilty as charged. No mention was made of this on the trial. Plaintiffs offered evidence to the effect that they were in the exercise of due care and caution for their own safety and the jury apparently were instructed that they must prove this allegation to recover although the instructions are not abstracted. In these circumstances the failure to file any reply was waived. *Eagle Indemnity Co. v. Haaker*, 309 Ill. App. 406; *Ford Motor Co. v. Nat. B. I. Co.*, 294 Ill. App. 585. Moreover the allegation in defendant's answer, that plaintiffs were guilty of wilful and wanton misconduct, did not make this charge an affirmative defense but merely tended to show that plaintiffs were not in the exercise of due care.

The judgments of the Circuit court of Cook county are affirmed.

*Judgments affirmed.*

MATCHETT, P. J., and NIEMEYER, J., concur.