*In re* ESTATE OF FRED GIGELE, Deceased.—(ELVIE S. GIGELE, Petitioner-Appellee, *v.* FREDERICK GIGELE, Ex'r of the Estate of Fred Gigele, Respondent-Appellant.)

First District (3rd Division)   No. 77-372

Opinion filed September 13, 1978.

Synek, Bishart & Porikos, of Chicago (Henry Thrush Synek, of counsel), for appellant.

Charles Locker, of Chicago, for appellee.

Miss JUSTICE McGILLICUDDY delivered the opinion of the court:

This appeal arises as the result of an order of the Circuit Court of Cook County granting the petitioner, Elvie S. Gigele, a surviving spouse's award pursuant to her motion under section 178 of the Probate Act (Ill. Rev. Stat. 1975, ch. 3, par. 178). By way of an affirmative defense the respondent, Frederick Gigele, executor of the estate of Fred Gigele, alleged that the petitioner was not entitled to a surviving spouse's award because she had waived the right to such an award by executing an antenuptial agreement with the deceased. In her reply to the affirmative defense, Elvie S. Gigele asserted that the decedent induced her to sign the agreement by misrepresenting to her that the document was a "paper for her protection," and that she did not read the document before she signed it. In granting the surviving spouse's award, the trial court specifically stated, "[T]he alleged Pre-Nuptial or Ante-Nuptial Agreement and the same is invalid." An award was ordered in the minimum amount of $5000. On appeal, the respondent contends that the finding of the invalidity of the antenuptial agreement is against the manifest weight of the evidence.

The antenuptial agreement is undated and, therefore, poses the problem as to when it was entered into by the petitioner and the decedent. The agreement waives all the rights of the petitioner with respect to her statutory share in the estate of her late husband. While the deceased's will contains a provision that the petitioner have the household furnishings of the deceased, it otherwise makes no provisions for her benefit. The respondent's inventory of the estate subject to probate values the deceased's property at $9032. However, it is the position of the petitioner that the estate is substantially larger than suggested by the inventory. She has renounced the terms of the will in order to seek a full statutory share as the deceased's widow. The property of the deceased as scheduled by the agreement was valued at $112,500, while the value of the petitioner's property was scheduled at $2000. The present appeal involves whether the evidence in this case supports the finding that the antenuptial agreement is invalid.

The record discloses that the petitioner, who prior to her marriage to Fred Gigele was known as Elvie Gustafson, married the deceased on July 14, 1962. The marriage continued until the death of Mr. Gigele on October 4, 1974. At the time of the hearing in the trial court, the petitioner testified that she was receiving, as her sole income and means of support, $295 per month from Social Security and that her rent was $125 per month.

The petitioner indicated that throughout her marriage to the deceased, she knew nothing of her husband's financial matters, and that Mr. Gigele "took care of everything." Mrs. Gigele admitted to signing the undated document which the respondent admitted into evidence as the antenuptial agreement; however, her testimony was that the document was signed after she had married Gigele. She recalled that she signed the document on August 27, 1962, in the law offices of Ray Poplett, who at that time was her husband's attorney. She indicated that this was the only time she was at Poplett's offices. The petitioner further testified that no one explained the document to her. She said that the deceased told her, "Just sign these. There are papers for you to be taken care of." While the petitioner's signature on the document reads "Elvie Gustafson," she explained that she forgot to put down "Gigele," and simply signed her former name. The petitioner's recollection of the date on which she signed the document was aided by handwritten notes which she made during the course of the trip she took with the deceased following their marriage. One of these notes is dated August 27 and it indicates, "[W]e went to Sears' at six corners and then went with Fred to his lawyer."

Testifying on behalf of the respondent, Ray Poplett essentially contradicted the evidence given by Mrs. Gigele. He indicated that he was the attorney for Fred Gigele and in that capacity prepared the document offered as the antenuptial agreement. He further stated that the document was signed in his office by both the petitioner and the deceased on February 16, 1962, a date prior to the marriage of the Gigeles, and that was the only time Mrs. Gigele was in his office. Poplett testified that a will for Fred Gigele was also prepared by him at the same time and was executed by the deceased the same day the antenuptial agreement was signed. This will was also admitted into evidence. The witness related that prior to the signing of the antenuptial agreement he explained the document to both parties and each of them read the document in his presence. However, Poplett did not advise the petitioner that she had a right to consult another attorney before signing the document. He further indicated that the explanation of the document took about five minutes. He acknowledged his signature as a witness to the document and indicated that his secretary at the time was also present and she signed as a second witness.

While Poplett was unable to corroborate his testimony of the date of execution of the document with an office diary, he did produce a billing statement made out to the deceased and dated February 16, 1962. The items listed on the statement were a will and an antenuptial agreement. Poplett also produced handwritten notes which he testified as being taken by him on February 8, 1962, during the conversation with Fred Gigele concerning the content of the antenuptial agreement.

A former secretary of Poplett was a witness for the respondent. She testified that she typed the antenuptial agreement and was present in Poplett's office at the time this document was executed by the petitioner and the deceased. She acknowledged her signature as a witness to the signing, and further corroborated the testimony of Poplett that the document was executed on February 16, 1962. However, she stated that the signing procedures took about an hour. This witness offered no evidence as to the substance of the conversation between Poplett and the Gigeles concerning the document.

■■ ■ The law recognizes the right of competent parties to enter into antenuptial agreements concerning the ultimate disposition of each one's property. (*Seuss v. Schukat* (1934), 358 Ill. 27, 192 N.E. 668.) However, the validity of such an agreement depends not upon the production of a document but whether the parties have knowledge or reasonably ought to have knowledge of the extent of each other's property. (*Megginson v. Megginson* (1937), 367 Ill. 168, 10 N.E.2d 815; *Eule v. Eule* (1974), 24 Ill. App. 3d 83, 320 N.E.2d 506.) Where the provisions made for the surviving spouse are disproportionate to the extent and value of the deceased's spouse's estate and a confidential relationship exists at the time the agreement is executed, a presumption of concealment by the deceased is raised and the burden of showing the absence of such concealment is cast upon the representative of the deceased's estate. (*Watson v. Watson* (1955), 5 Ill. 2d 526, 126 N.E.2d 220.) The present appeal presents conflicting evidence with respect to the knowledge of the petitioner concerning the value of her late husband's estate, and there is also a conflict concerning the time at which the petitioner executed the agreement. The first conflict relates to the issue of knowledge and concealment generally, while the second relates to whether or not a confidential relationship existed between the petitioner and the deceased at the time of the signing of the agreement. On review of this matter, it is our obligation to accept those inferences arising from the conflicting nature of the evidence which support the judgment of the trial court. *Rhodes v. Sigler* (1975), 27 Ill. App. 3d 1, 325 N.E.2d 381.

■■ ■ The trial court found that the alleged antenuptial agreement was invalid. It is our opinion that the evidence supports this finding. There was no conflicting testimony about the relationship between the petitioner and the decedent either in February 1962 or in August 1962. A confidential relationship existed if they were planning to get married or were already married. (*Megginson v. Megginson* (1937), 367 Ill. 168, 177.) The provisions made for the petitioner were disproportionate to the extent and value of the decedent's estate, giving rise to the presumption that there was concealment. We believe that the evidence presented supports Mrs. Gigele's contention that she was induced to sign the document by

misrepresentation. At the time that she signed the instrument she was not told that she had the right to consult an attorney. She testified that she did not read the document, it was not explained to her, she trusted her husband when he told her to sign the instrument for her protection, and she knew nothing about her husband's finances. The trial judge was entitled to conclude that she did not know what she was signing and that the true nature and extent of the agreement and its effect on her were concealed from her. We believe that this conclusion was not against the manifest weight of the evidence. While the respondent presented evidence to rebut the presumption of concealment, it was the trial judge's responsibility to determine whether to believe Elvie Gigele or Poplett and his former secretary.

For the reasons stated above, the judgment of the Circuit Court of Cook County holding the agreement invalid and granting the surviving spouse's award is affirmed.

Affirmed.

JIGANTI, P. J., and SIMON, J., concur.