CHARLOTTE EMMA FLEMING, Plaintiff-Appellant, *v.* FRANK L. FLEMING *et al.*, Defendants-Appellees.

Fifth District   No. 79-285

Opinion filed June 11, 1980.—Rehearing denied July 11, 1980.

Scott, Beeman & Scott, of Springfield, and Maureen M. Lober, of Macy & Lober, of Litchfield, for appellant.

G. Bradley Hantla, Ltd., of Litchfield, and Ralph A. Vandever, of Vandever and Vandever, of Hillsboro, for appellees.

Mr. JUSTICE KASSERMAN delivered the opinion of the court:

Plaintiff, Charlotte Peterson Fleming, appeals from the judgment of the Montgomery County Circuit Court in an action seeking equitable relief in which there was an advisory jury. The judgment of the trial court upheld the validity of an antenuptial agreement.

Plaintiff and W. Harold Fleming, who is deceased, were married on April 24, 1974. At the time of the marriage, plaintiff was 68 years old and Harold Fleming was 73 years old. Both were widowed and had children by their previous marriages. Prior to the marriage and while the parties were engaged to be married, plaintiff and Harold Fleming executed an antenuptial agreement in the law office of Frank Cooper. By its terms the agreement provided that in consideration of the contemplated marriage, each of the parties would not claim any right or title in the other's estate and that each would retain the right to dispose of their separate estates as if they both had remained single.

Harold Fleming died August 7, 1976. Under his will his widow received the household furnishings and a life estate in the marital home. The remainder of the estate, valued at approximately $336,000, was left to the decedent's children and grandchildren. On October 18, 1976, plaintiff filed a renunciation of the will, electing to take a surviving spouse's statutory share of decedent's estate. She then filed a complaint seeking equitable relief on December 3, 1976, to set aside the antenuptial agreement. She alleged that the decedent had not fully disclosed the nature and extent of his property prior to her signing of the agreement; that he did not explain the meaning or consequences of the agreement prior to the signing of the agreement; and that she did not have independent legal advice or counsel prior to the signing to advise her of her legal rights as a surviving spouse and the consequences of her signing the antenuptial agreement. After a four-day trial, the jury found the antenuptial agreement to be valid. The trial court accepted the jury's verdict and entered judgment in favor of defendants and against plaintiff.

On appeal, plaintiff first contends that the judgment of the trial court was contrary to the manifest weight of the evidence and that certain testimony was improperly admitted into evidence.

The evidence presented at trial indicated that both plaintiff and the deceased had been residents of Litchfield, Illinois, for many years. Plaintiff had lived in Litchfield for more than forty years and had worked as a clerk in various stores in downtown Litchfield. The deceased was president of the Litchfield National Bank from 1945 to 1974 and was also on the bank's board of directors. Plaintiff and the deceased had gone together about two years before the marriage. Plaintiff testified that at the time the antenuptial agreement was signed, she knew that Mr. Fleming had been a director of the Litchfield National Bank and owned stock in the bank; however, she stated that she did not know the amount of stock owned by decedent. She also testified that she knew he had an interest in certain farm property in Macoupin County and an interest in the Litchfield Creamery. She also stated that Mr. Fleming had told her about other of his investments, including stocks and mutual funds.

Plaintiff denied having examined the contents of the antenuptial agreement before signing it, stating that she signed it because her husband asked her to. Plaintiff further testified that she and the decedent had their own separate checking and savings accounts during the marriage; and the evidence disclosed that money plaintiff had received from the sale of her home had been deposited in her separate savings account.

The son of decedent, David W. Fleming, and David's wife Thelma testified concerning a conversation which took place at a family gathering on Easter Sunday, April 14, 1974. David and Thelma both testified that plaintiff, the decedent, and the two of them had discussed the extent of the property of the decedent and plaintiff's individual property. David and Thelma both recalled that plaintiff and decedent had expressed their mutual desire to execute an antenuptial agreement, each barring the other from making claims against the other's estate in order that plaintiff and decedent could distribute their own property to their own children. David testified that he remembered using the figure of a quarter of a million dollars during the conversation to illustrate the value of his father's estate.

Plaintiff objected to the introduction of any evidence pertaining to this conversation at trial on the basis of the Dead Man's Act (Ill. Rev. Stat. 1977, ch. 51, par. 2) and, additionally, that the conversation was hearsay.

In rebuttal, plaintiff denied that any conversation of this nature took place and testified that only social and religious matters were discussed that day. Plaintiff further stated on cross-examination that she had never discussed business matters with David and her deceased husband. Defendants then inquired as to whether she had ever discussed with David and Mr. Fleming a lawsuit pending in Lincoln, Illinois, pertaining to an estate. Plaintiff objected to the question and moved for a mistrial. The court sustained the objection but denied the motion for a mistrial.

David Fleming testified that in his capacity as his father's accountant he had drawn up a list of his father's assets and delivered it to him on April 17, 1974. Defendants argue that it is reasonable to infer from this that the decedent had the list of assets drawn up for the benefit of plaintiff to inform her of the nature and extent of his property. There was no evidence to show that plaintiff actually saw the list of assets.

Frank Cooper was called as a witness for plaintiff after the court refused to allow plaintiff to call him as an adverse witness under section 60 of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 60). Mr. Cooper is the attorney who drew up the antenuptial agreement and the attorney for the estate of the decedent. He testified that plaintiff and decedent came to his office on April 18, 1974, to execute the agreement. He further related that the rights of a surviving spouse were generally discussed and the contents of the agreement were thoroughly discussed. Plaintiff then moved for leave to cross-examine Cooper on the basis of surprise, arguing that his testimony at trial differed substantially from his deposition. It was shown that in his deposition, Mr. Cooper had stated that he asked plaintiff if she understood that she was giving up her rights as a surviving spouse by executing the agreement. Thereupon, the motion for leave to cross-examination on the basis of surprise was denied. Plaintiff then requested the court to call Cooper as its witness because of the element of plaintiff's surprise. The court also denied this request. Mr. Cooper further stated that the meeting took 30 to 40 minutes and both parties appeared competent and aware of what they were doing. After Mr. Cooper testified that no schedule of assets was attached to the antenuptial agreement, plaintiff made an offer of proof of the testimony of attorney Jerry Reed to demonstrate that the usual practice to ensure full disclosure of a party's assets is to attach a list of assets to the antenuptial agreement.

Defendants introduced the decedent's 1974 income tax returns, which were signed by both plaintiff and decedent, as establishing plaintiff's ratification of the antenuptial agreement.

At the close of the trial, plaintiff's motion for a directed verdict was denied. The issue of the validity of the antenuptial agreement was submitted to the jury who found in favor of defendants.

Plaintiff contends that she did not have the necessary specific knowledge of the nature and character of decedent's property to intelligently choose to give up the rights she may have had as a surviving spouse. Plaintiff bases her argument on *Watson v. Watson* (1955), 5 Ill. 2d 526, 531-32, 126 N.E.2d 220, 223, in which our supreme court held an antenuptial agreement invalid, stating:

> "While we have held that the information as to the nature and extent of the holdings of the husband need not come directly from

him, and that surrounding circumstances may be such as to charge the wife with knowledge of his property (*Landes v. Landes*, 268 Ill. 11; *Yarde v. Yarde*, 187 Ill. 636), it does not follow that general reputation is sufficient to supply that knowledge. (*Brown v. Brown*, 329 Ill. 198.) To so hold would vitiate the reasoning behind the duty to make a full and fair explanation of the nature and extent of the husband's property. General understanding that a person is relatively wealthy is something less than knowing the exact nature and extent of his wealth. Obviously specific knowledge is required before a prospective wife can intelligently choose to take a small sum in payment for a release of her rights and interests in her prospective husband's property."

Plaintiff further contends that defendants failed to show that decedent did not deliberately conceal the nature and extent of his property from her.

■■ The Illinois law relating to antenuptial agreements is well defined. If the parties to an antenuptial agreement are married or engaged to be married before the contract is entered into, a confidential relationship exists. (*In re Estate of Gigele* (1978), 64 Ill. App. 3d 136, 380 N.E.2d 1144; *Megginson v. Megginson* (1937), 367 Ill. 168, 10 N.E.2d 815.) Further, if the provisions made for the surviving spouse are disproportionate to the deceased spouse's estate, a presumption of concealment by the decedent is raised and the burden of showing the absence of such concealment is cast upon the representative of the deceased's estate. (*In re Estate of Gigele.*) The law recognizes the right of competent parties to enter into antenuptial agreements concerning the ultimate disposition of each one's property. (*Seuss v. Schukat* (1934), 358 Ill. 27, 192 N.E. 668.) However, the validity of such an agreement depends not upon the production of a document but whether the parties have knowledge or reasonably ought to have knowledge of the extent of each other's property. *Megginson v. Megginson; Eule v. Eule* (1974), 24 Ill. App. 3d 83, 320 N.E.2d 506.

In the instant case, defendants contend that the antenuptial agreement was valid because plaintiff had sufficient knowledge of the nature and extent of decedent's property. Defendants rely on the following evidence to establish the sufficiency of plaintiff's knowledge: the conversation between plaintiff, the deceased and other family members on Easter Sunday; the list of assets; plaintiff's own testimony as to the property interests of the decedent of which she was aware; and Frank Cooper's testimony.

The evidence disclosed that the value of decedent's estate was made known to plaintiff during the course of the conversation on Easter Sunday. Plaintiff contends that any evidence pertaining to this conversation is inadmissible under the Dead Man's Act (Ill. Rev. Stat.

1977, ch. 51, par. 2). Plaintiff asserts that since she is suing as an heir and legatee of Harold Fleming, that evidence of the Easter Sunday conversation with him is barred by the statute.

Plaintiff's reliance on the Dead Man's Act is misplaced. The Act provides in pertinent part that:

> "In the trial of any civil action in which any party sues or defends as the representative of a deceased or incompetent person, no adverse party or person directly interested in the action shall be allowed to testify on his own behalf to any conversation with the deceased * * *." (Ill. Rev. Stat. 1977, ch. 51, par. 2.)

The purpose of the Act is not to create a disadvantage for the living but to remove the temptation of the survivor of a transaction to testify falsely and to equalize the position of the parties in regard to the giving of testimony. (*Boynton v. Phelps* (1869), 52 Ill. 210; *VanMeter v. Goldfarb* (1925), 317 Ill. 620, 148 N.E. 391.) Therefore, plaintiff is not included in the class of individuals sought to be protected by the Act. The Dead Man's Act owes its existence to the desire of the legislature and the courts to protect decedents' estates from depletion based on perjured testimony since it was considered that a party would be prone to testify falsely when such testimony cannot be directly contradicted. Thus, it was defendants, and not plaintiff, who were entitled to raise the objection that an adverse party or person directly interested in the action was incompetent to testify. The decedent's assets could not have been wasted or depleted by reason of defendants' testimony. Since plaintiff's position in this proceeding is adverse to the intention and design of the decedent, it is she who would be incompetent to testify concerning any conversation with the decedent unless, as specified in subparagraph (1) of the Act, any person testifies on behalf of the representative. In that respect, plaintiff was permitted to testify in rebuttal to the testimony of the representative of the decedent's estate. Thus, the plaintiff was present during the conversation with the decedent and testified at trial. Plaintiff and the two witnesses all had an equal opportunity to present their versions of the conversation; and each party could cross-examine the other. Thus, David and Thelma Fleming were not rendered incompetent to testify concerning the conversation by virtue of the Dead Man's Act. Further, a similar objection was rejected by the court in *DeMarco v. University of Health Sciences* (1976), 40 Ill. App. 3d 474, 352 N.E.2d 356, for the reason that a witness other than the one testifying was available to contradict the witness' account of his conversation with a decedent. Such was the case here, and plaintiff did in fact testify.

Plaintiff also contends that testimony concerning the conversation on Easter Sunday was inadmissible hearsay evidence. We disagree. The conversation complained of is an out-of-court statement which does not

constitute hearsay evidence. None of the testimony concerning the decedent's statements made during the conversation was offered as an assertion to show the truth of the matters asserted by him. The decedent's assertions were not offered as proof that he in fact did own those items of property which were referred to in the statements made outside of court. The assertions were offered to prove that plaintiff did, contrary to her own testimony, have a conversation on April 14, 1974, concerning her deceased husband's property. (*People v. Carpenter* (1963), 28 Ill. 2d 116, 190 N.E.2d 738; McCormick, Evidence §246 (2d ed. 1972); 6 Wigmore, Evidence §1766 (1976).) Therefore, the evidence of the Easter Sunday conversation was not admissible as hearsay.

Since the evidence of the conversation on Easter Sunday was properly admitted into evidence, the trial court was justified in finding that there was sufficient evidence to establish that plaintiff had the requisite knowledge to enable her to execute a valid antenuptial agreement. Despite plaintiff's denial that a conversation relative to the extent of decedent's property did in fact take place, the court was at liberty to disbelieve her and accept the testimony of David and Thelma Fleming. As stated by the court in *In re Estate of Gigele*, "On review of this matter, it is our obligation to accept those inferences arising from the conflicting nature of the evidence which support the judgment of the trial court. *Rhodes v. Sigler* (1975), 27 Ill. App. 3d 1, 325 N.E.2d 381." 64 Ill. App. 3d 136, 139, 380 N.E.2d 1144, 1147.

The evidence presented at trial indicates that plaintiff had sufficient specific knowledge of the decedent's assets derived from the decedent and his family to execute a valid antenuptial agreement. There is evidence that she knew that the decedent owned his home, farm property, bank stock, Litchfield Creamery stock, mutual funds and that he was a director and past president of the Litchfield National Bank. She knew the total value of all of the decedent's assets to be approximately a quarter of a million dollars approximately 2½ years before his death. This knowledge where the party is aware of the form or nature of the property and its value is more than a general understanding of his property as referred to in *Watson v. Watson*.

■■ In view of all the evidence presented, the judgment of the trial court was not against the manifest weight of the evidence. There was ample evidence for the trial court to find that the presumption of concealment was rebutted by defendants. There was evidence that the deceased discussed his assets with plaintiff at various times despite her denial that the Easter Sunday conversation had taken place; and by her own testimony it is shown that plaintiff possessed a considerable degree of knowledge concerning the nature and extent of decedent's property before the antenuptial agreement was signed.

■■■ Plaintiff also contends that the trial court erred in not allowing her to examine Frank Cooper under section 60 of the Illinois Civil Practice Act, relying on *Club Aluminum Co. v. American Indemnity Co.* (1937), 290 Ill. App. 487, 8 N.E.2d 526. However, in *Club Aluminum* plaintiff called defendant's trial attorney as a witness under section 60 which is distinguishable from the instant case. Although Mr. Cooper had acted as the attorney for the decedent or both plaintiff and decedent in drawing up the antenuptial agreement, he was neither a party to this action nor an agent of a party to this action. To the contrary, the evidence disclosed that Mr. Cooper informed defendants that he could not represent them in this action because he was the attorney for the estate. The trial court therefore properly refused to allow plaintiff to examine Mr. Cooper pursuant to section 60. The court also properly refused to allow plaintiff to cross-examine Mr. Cooper on the basis of surprise because Mr. Cooper's trial testimony was not substantially different from his deposition. For the same reason, plaintiff's request that Mr. Cooper be called as the court's witness due to surprise was also properly denied.

■■ Plaintiff contends that the trial court erred in failing to grant her motion for a mistrial because of the question asked of her pertaining to the lawsuit she had pending in Lincoln, Illinois. This question when read in context did not require the granting of a mistrial by the trial court and does not require the granting of a new trial by this court. The record indicates that plaintiff, after having testified on cross-examination that she had never discussed business matters with David Fleming, was asked if she had not discussed the Lincoln lawsuit with David. After plaintiff moved for a mistrial, the testimony of David Fleming that plaintiff had discussed the lawsuit with him was offered in the hearing on plaintiff's motion. Thus, there was no attempt on the part of the defense to convey to the jury improper information. To the contrary, the question was material to the issue of whether plaintiff had discussed business matters with David; therefore, the court did not err in refusing to grant a mistrial.

Finally, plaintiff contends that the trial court erred in directing the jury to decide a question of law, namely, whether the antenuptial agreement was valid. Section 63 of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 63) provides:

> "Subject to rules providing otherwise, the court may in its discretion direct an issue or issues to be tried by a jury, whenever it is judged necessary in any action seeking equitable relief."

■■ In an action seeking equitable relief neither party is entitled to a trial by jury, although the court in its discretion may submit any issue or issues to a jury in an advisory capacity on matters of fact. Since the jury's verdict is purely advisory, it is not binding on the trial court and may be disregarded by it. (*Cf. Ray v. Winter* (1976), 39 Ill. App. 3d 567, 350

N.E.2d 331, *reversed on other grounds* (1977), 67 Ill. 2d 296, 367 N.E.2d 678; *Sidwell v. Sidwell* (1975), 28 Ill. App. 3d 580, 328 N.E.2d 595, *subsequent appeal considered on other grounds* (1978), 58 Ill. App. 3d 33, 373 N.E.2d 814; *Riehl v. Riehl* (1910), 247 Ill. 475, 93 N.E. 318.) Therefore, regardless of whether the issue put to the jury was a question of law or a question of fact, we conclude that no prejudice to plaintiff resulted. The trial court was not bound by the jury's verdict and was free to disregard the verdict in its entirety regardless of whether the jury concluded that the agreement was valid or invalid based upon the evidence presented. The standard to be applied in resolving this issue presented by plaintiff's appeal is found in *Ray v. Winter* (1977), 67 Ill. 2d 296, 307, 367 N.E.2d 678, 684, in which our supreme court stated that although the trial court had been assisted by an advisory jury, "the findings are those of the court, and they will not be disturbed unless contrary to the manifest weight of the evidence. *Vendo Co. v. Stoner* (1974), 58 Ill. 2d 289, 311." In the instant case, the judgment of the trial court was not against the manifest weight of the evidence.

For the foregoing reasons, the judgment of the Circuit Court of Montgomery County is affirmed.

Affirmed.

KARNS and SPOMER, JJ., concur.