ROBERT L. YETTON *et al.*, Plaintiffs-Appellants, v. VIVIAN HENDERSON, Special Adm'r for the Estate of Johnnie W. Henderson, Defendant-Appellee.

Third District   No. 3—88—0846

Opinion filed October 5, 1989.—Rehearing denied December 19, 1989.

974

Raymond C. Rose, of Raymond C. Rose, Ltd., of Peoria (James E. Shadid, of counsel), for appellants.

McConnell, Kennedy, Quinn & Johnston, Chartered, of Peoria (Paul P. Gilfillan, of counsel), for appellee.

JUSTICE SCOTT delivered the opinion of the court:

Plaintiffs-appellants Robert L. Yetton and Faye Yetton (plaintiffs) filed a two-count complaint against Johnnie W. Henderson alleging negligent operation of his truck, causing a collision with Robert Yetton (Yetton), resulting in permanent head injuries to Yetton. Vivian Henderson was a passenger in Johnnie Henderson's truck. Johnnie Henderson subsequently died in an accident unrelated to this incident, and Vivian Henderson was substituted as representative of his estate.

Plaintiffs alleged that both parties were driving west on Interstate 74 in Peoria County, and that Johnnie Henderson's truck changed lanes in front of the Yettons' vehicle, giving Yetton no time

to avoid a collision with the Henderson truck. By way of answer, defendant admits to the lane change, but denies that it caused the accident.

Defendant moved the court to apply the Dead Man's Act (Ill. Rev. Stat. 1987, ch. 110, par. 8—201) to bar Yetton from testifying as to the event. The court granted the motion and barred Yetton from testifying about the accident.

At trial, plaintiffs called Vivian Henderson to testify as an adverse witness. Mrs. Henderson testified that she was a passenger in her husband's truck, and they were traveling west at 50 to 55 miles per hour, when they changed lanes. She related that they felt a thump in the rear of the truck just after changing lanes. She also stated that there was a light misty rain, although the investigating officer testified that it was raining harder than he had ever seen before.

Robert Yetton was allowed to testify that as he moved onto Interstate 74, he could see a slow moving truck ahead of him and then changed lanes intending to pass the truck on the left. The court then instructed that Yetton could testify no further regarding the accident.

Lieutenant David Briggs was then qualified as an accident reconstructionist. The court, however, barred Lt. Briggs from relying on testimony of Yetton, which was barred by the Dead Man's Act in reaching his opinion.

Plaintiff also subpoenaed Trooper Dan Law, who was listed by defendant as her expert. Pursuant to defendant's motion, the court quashed the subpoena and further refused to allow plaintiff to call Trooper Law as a witness. Trooper Law, however, was not called by defendant as a witness, and plaintiff's additional request to call Trooper Law was denied.

Defendant presented Vivian Henderson as a witness and the following questions and answers were given:

"QUESTION: All Right, now, Mrs. Henderson, I am going to ask you some questions about your experience with your husband and your observations with your husband with respect to his driving vehicles. In the years of your marriage, did you ever have opportunities to see and be with Mr. Henderson when he was actually driving in—lets put automobiles to begin with?

ANSWER: Yes.

QUESTION: Did you during your years of marriage with your husband have numerous opportunities to have occasion to

be with him while driving a farm truck or farm related trucks?

ANSWER: Yes.

QUESTION: Would that statement also be true with respect to this farm truck that you had for approximately two years before the accident?

ANSWER: Yes.

QUESTION: All right. Would that statement also be true with respect to farm related vehicles that may have drive while performing farming operations?

ANSWER: Yes.

QUESTION: Now, I don't want any testimony, Mrs. Henderson, about the specific accident, but based upon—.

THE COURT: Excuse me, could I see you?"

After a side bar conference was held, the defendant's attorney was allowed to withdraw the questioning, and the judge instructed the jury to disregard the testimony. The jury subsequently returned a verdict in favor of the defendant and this appeal followed.

Plaintiffs raise numerous issues on review. First, plaintiffs assert the trial court erred in applying the Dead Man's Act to prevent Yetton from testifying about the accident. Plaintiffs' first argument on this point is that since both parties had eyewitnesses to present the respective sides of the case, the Dead Man's Act does not apply. As support, plaintiff cites *Fleming v. Fleming* (1980), 85 Ill. App. 3d 532, 406 N.E. 2d 879, *DeMarco v. University of Health Sciences/Chicago Medical School* (1976), 40 Ill. App. 3d 474, 352 N.E. 2d 356, *Foster v. Englewood Hospital Association* (1974), 19 Ill. App. 3d 1055, 313 N.E. 2d 255, *Van Meter v. Goldfarb* (1925), 317 Ill. 620, 148 N.E. 391, and *Plank v. Holman* (1970), 46 Ill. 2d 465, 264 N.E. 2d 12. All of these cases, however, are factually dissimilar to the present case and therefore not determinative authority.

*Fleming* involved an action by the decedent's widow against the decedent's estate to have a certain antenuptial agreement set aside on the grounds that the decedent did not disclose the extent of his estate to the widow, prior to the agreement being made. The widow sought to have certain purported conversations between herself, the decedent and others excluded under the Dead Man's Act, wherein the value of decedent's estate was made known to the widow. The court in deciding the issue noted that the ultimate purposes of the Dead Man's Act are to protect the depletion of estates by removing the temptation of the survivor of a transaction to testify falsely and to equalize the position of the parties in regard to the giving of testimony. (*Fleming*, 85 Ill. App. 3d 532, 406 N.E. 2d 879.) Moreover, the

court stated that it was not the widow who was entitled to the protection of the Dead Man's Act, but the representatives of the decedent's estate. Further, the representatives of the decedent's estate, in essence, waived the privilege by testifying about the conversations, the widow was also allowed to testify regarding the conversations, and thus, the parties each had equal opportunity to present evidence on the issue. *Fleming*, 85 Ill. App. 3d 532, 406 N.E. 2d 879.

*DeMarco*, which was cited with approval in *Fleming*, involved a situation where a medical student sued his medical school for breach of contract. A question arose regarding whether or not a certain conversation between the student and the dean, who had since passed away, as well as the dean's secretary, was excluded under the Dead Man's Act. The court determined that the facts of the case did not fall within the area the Dead Man's Act was designed to cover and allowed the secretary to testify. *DeMarco*, 40 Ill. App. 3d 474, 352 N.E. 2d 356.

In *Foster*, the widow of a decedent sued the coexecutors of a deceased doctor's estate in a wrongful death claim. The coexecutors sought to have the testimony of the widow barred regarding her marriage to the decedent plaintiff and the birth of the couple's children. The court found the Dead Man's Act did not prevent this testimony, because it was testimony that the doctor, if living, could not refute. In essence, the coexecutors of the doctor's estate had the same evidentiary capability to refute the widow's testimony as the doctor would have had if living. Disallowing the testimony would have done nothing but defeat the valid claims of the widow and children. *Foster*, 19 Ill. App. 3d 1055, 313 N.E. 2d 255.

In *Van Meter*, three boys darted into an alley in front of the defendant's car, and one boy was struck by the auto and subsequently died. The deceased boy was the brother of one of the other boys involved in the occurrence. The decedent's administrator sought to have the defendant's testimony of the occurrence barred under the Dead Man's Act. The court stated that the defendant's testimony was proper because the administrator had called as a witness the decedent's brother, "a real party in interest," who testified about the occurrence and thus the defendant was allowed to give his version of the occurrence as an exception to the Dead Man's Act. *Van Meter*, 317 Ill. 620, 148 N.E. 391.

In *Plank*, decedent's wife brought a wrongful death action against various defendants. The wife was an eyewitness to the collision resulting in her husband's death. At trial, the wife attempted to admit evidence of her husband's good driving habits to which one or

more defendants objected. The court held that since the wife made no showing that her direct eyewitness testimonial evidence was unavailable, she could not make use of secondary evidence regarding safe driving habits. (*Plank*, 46 Ill. 2d 465, 264 N.E. 2d 12.) What the *Plank* court appears to be saying is that the wife had to make a choice of either testifying and waiving her right to invoke the Dead Man's Act or simply presenting no evidence whatsoever regarding the decedent's exercise of due care.

■ Plaintiff misconstrues the holdings of the above cases. None of these cases stand for the proposition that merely because there is another eyewitness to the accident, the adverse party can proceed with testimony otherwise barred by the Dead Man's Act. The privilege of the Dead Man's Act in this case rested with the defendant. Similarly, defendant did not waive the right to invoke the Dead Man's Act simply because Mrs. Henderson took the stand and testified as an adverse witness.

The Dead Man's Act states in pertinent part:

> "In the trial of any action in which any party *** defends as the representative of a deceased person ***, no adverse party or person directly interested in the action shall be allowed to testify on his or her own behalf *** to any event which took place in the presence of the deceased ***." (Ill. Rev. Stat. 1987, ch. 110, par. 8—201.)

The Dead Man's Act then lists four exceptions, none of which are applicable here. We believe the Dead Man's Act clearly applies to the facts of this case, and plaintiff has failed to cite any other common law exceptions to the Act. Thus, the general rule must be followed barring plaintiff's testimony, as it has in traffic accident cases in the past. See *Murphy v. Hook* (1974), 21 Ill. App. 3d 1006, 316 N.E. 2d 146; *Compton v. Frank* (1970), 126 Ill. App. 2d 356, 261 N.E. 2d 727; *Heil v. Kastengren* (1946), 328 Ill. App. 301, 65 N.E. 2d 579.

We realize the seemingly harsh results the Dead Man's Act sometimes produces, but our legislature has determined the law and it is not our place to change or ignore it.

■ Plaintiff next charges the trial court erred in alerting defense counsel that he was waiving the Dead Man's Act by putting in testimony of careful habits of the decedent through the decedent's wife and then, after a conference outside the presence of the jury, allowing the defense attorney to withdraw the questions. The exact questions and answers elicited from Vivian Henderson, previously quoted, are undeniably foundation questions for testimony regarding the decedent's careful driving habits. When such testimony is intro-

duced by the party protected by the Dead Man's Act, the adverse party is rendered competent to testify as to the event. (*Rouse v. Tomasek* (1935), 279 Ill. App. 557.) We do not believe the trial court abused its discretion in allowing the question and answers to be withdrawn. The court has inherent authority to exclude evidence on its own motion without an objection from counsel. Nor do we believe that the foundation testimony prejudiced the jury. These questions asked nothing more than whether Mrs. Henderson had the opportunity to observe the decedent driving certain types of vehicles. No ultimate questions were asked about whether Mrs. Henderson actually observed her husband use careful driving habits while operating vehicles.

The primary concern, however, is whether it was appropriate for the trial judge to halt Mrs. Henderson's testimony, without objection of plaintiff's counsel, when it was absolutely clear that defense counsel was about to ask questions regarding careful habits. After halting the testimony the trial judge stated:

"On the record. The reason I called them forward was that I thought I saw a foundation for careful habit testimony. And I \*\*\* the purpose of my sidebar comment was not that I had any question about careful habit testimony being admissible, but I don't \*\*\* I wasn't sure and I wanted to make sure before it all got before the jury, that we resolve a legal question that I thought might develop, and that is can you persist in your statutory claim under the Dead Man's statute and still get in careful habit testimony. Because, although I have no experience with it, I don't see how the law could possibly be that way.

Now, I am confessing on the record that I have no idea what the answer is. I haven't had time to look it up in *Cleary*. It's just before it happened, I wanted to get all this out. But it's a red flag."

Defense counsel then indicated he would not ask the ultimate question as to careful habit testimony with regard to Mr. Henderson always looking in his rearview mirror prior to changing lanes and withdrew his foundation questions.

Defendant cites cases for the proposition that trial judges should be granted a substantial degree of discretion in the handling and conduct of proceedings during trial (*Eckley v. St. Therese Hospital* (1978), 62 Ill. App. 3d 299, 379 N.E. 2d 306), and the judge's remarks and conduct are grounds for reversal only if they are such as would ordinarily create prejudice in the minds of the jury. (*Oko v.*

*Rogers* (1984), 125 Ill. App. 3d 720, 466 N.E. 2d 658.) Moreover, a party is not entitled to a perfect trial, merely a fair trial. (*Zelinski v. Security Lumber Co.* (1985), 133 Ill. App. 3d 927, 479 N.E. 2d 1091.) We do not refute these general propositions and believe each case was decided correctly based on those particular facts. Nonetheless, it is clear in this case that defense counsel would have introduced careful habit testimony had not the court interrupted and posed the question of waiver of the Dead Man's Act. Plaintiff's counsel was obviously making the strategical decision to allow said testimony, knowing full well that Yetton, who was then barred from testifying by the Dead Man's Act, may have become competent to testify based on defendant's waiver; and the trial judge's own remarks indicate he believed that must be the status of the law as well. Had plaintiffs then been allowed to give their rendition of the accident, we find it reasonable to believe that the jury could have decided in plaintiffs' favor.

■■■ ■ Trials are adversary proceedings and the trial judge, although not merely a referee or moderator, should not hinder an advocate's strategy as long as the strategical method is within legal and ethical standards. Had the testimony being introduced been clearly irrelevant or cumulative, the trial judge, in the interest of judicial economy, would not need to wait for an objection from opposing counsel before halting the testimony. The careful habit testimony, however, was not clearly irrelevant or cumulative although possibly objectionable under the best evidence rule. In essence, the trial judge unintentionally became an advocate for the defense and in this particular situation clearly prejudiced plaintiff's strategy.

Based on our above finding, we reverse the decision of the trial court denying plaintiffs' motion for a new trial and motion to reconsider and remand the cause for a new trial. All other issues raised by plaintiff are, therefore, now moot and require no comment here.

Reversed and remanded.

WOMBACHER, P.J., and BARRY, JJ., concur.